(66 App. Div. 534.)

PEOPLE v. HERLIHY.

(Supreme Court, Appellate Division, First Department. December 6, 1901.)

1. POLICE OFFICERS—DUTY—HOUSES OF ILL FAME.
    Under Greater New York Charter, § 315, providing that it is the duty of the police department, and the members of the police force are empowered, to inspect all houses of ill fame and to repress all unlawful conduct therein, and to arrest all persons guilty of violating any law

or ordinance; and section 322, declaring a person who keeps a house of ill fame guilty of a misdemeanor,—a police officer who knowingly permits houses of ill fame to be maintained in his precinct omits the performance of a duty enjoined by law.

**2. SAME—NEGLECT OF DUTY—MISDEMEANOR—SPECIAL PROVISION.**

Under Pen. Code, §§ 117, 154, providing that a public officer on whom any duty is enjoined by law, who willfully neglects to perform the duty, where no special provision is made for the punishment of such delinquency, is guilty of a misdemeanor, a police officer who willfully permits the maintenance of houses of ill fame in his precinct is guilty of such misdemeanor; the power to govern officers vested in the police commissioner of Greater New York Charter, §§ 270–272, 300, not being such special provision as is referred to in the Penal Code.

**3. SAME—INDICTMENT—HOUSE OF ILL FAME—DESCRIPTION.**

An indictment charging that there were certain specified houses of ill fame in the precinct of a certain public officer, and that he willfully omitted to suppress them, states facts sufficient to constitute a misdemeanor; and such statement is not affected by a further, but not inconsistent, description of the character of such houses, and of the unlawful practices of the inmates.

**4. SAME—SEPARATE STATEMENT AS TO EACH HOUSE.**

An indictment of a public officer for willful omission of duty in failing to suppress a large number of specified houses of ill fame in his precinct need not state separately the facts as to each of the alleged houses or the names of the keepers or inmates.

**5. SAME—DUPLICITY.**

An indictment charging that during all the time between specified dates, covering nearly one year, 109 specified houses in the precinct of defendant, a police officer, were houses of ill fame, and that he willfully omitted to suppress them, states but one offense, and is not demurrable for duplicity.

Appeal from court of general sessions, New York county.

John D. Herlihy was indicted charged with willfully omitting to perform a duty enjoined by law on him as a public officer. From a judgment allowing a demurrer to the indictment (72 N. Y. Supp. 389), the people appeal. Reversed.

The following is the indictment:

"The grand jury of the county of New York by this indictment accuse John D. Herlihy of the crime of willfully omitting to perform a duty enjoined by law upon him as a public officer, committed as follows: Heretofore, to wit, on the 22d day of September, in the year of our Lord 1899, and at all the times herein mentioned, at the borough of Manhattan, of the city of New York, in the county of New York aforesaid, the said John D. Herlihy was a public officer, to wit, a member of the police force of the said city of New York, of the grade and designation of captain of police, assigned and detailed to, and the principal officer of police and in command of, that portion of the territory of the said city of New York known and designated for the purpose of police government, and duly established by the then board of police of the said city, as the 'Twelfth Precinct' of the said city, the said precinct being entirely within the borough of Manhattan and county of New York; and at all the times aforesaid the said John D. Herlihy, as such captain of police and as the commanding officer of the said precinct, was charged, among other things, with the duty of using and exercising, and causing to be used and exercised, all proper, reasonable, and effective means, and all means within his power as such captain of police, for especially preserving the public peace and preventing crime in the said precinct, and for detecting and arresting offenders therein, and for carefully observing and inspecting all houses of ill fame and prostitution in the said precinct, and repressing and restraining all unlawful and disorderly con-

duct and practices therein, and for enforcing and preventing violations of the laws of this state in force in said city in the said precinct; and such duty as aforesaid was at all times herein mentioned enjoined by law upon the said John D. Herlihy as such public officer and captain of police as aforesaid, and had under his command and subject to his orders numerous sergeants, roundsmen, and patrolmen of police, and was vested with full and adequate power and authority as such public officer and police officer for the proper and efficient performance of such duty. And on the said 22d day of September in the year aforesaid, and from thence continually to and including the 18th day of November in the year 1900, there were continually, openly, and notoriously kept and maintained in the said precinct, to wit, at and in the buildings there situate known respectively by the following street numbers, and at each of them, to wit: [here follows a list of 109 houses designated by street and number], certain houses of ill fame and prostitution, and at all the times aforesaid unlawful and disorderly conduct and practices were committed in each of such houses, and divers common prostitutes and disorderly persons resorted to and resided therein, and solicited men for the purpose of sexual intercourse therefrom and in front thereof,—all of which he, the said John D. Herlihy, at all the times aforesaid well knew. Nevertheless, the said John D. Herlihy, being such public officer and captain of police, as aforesaid, well knowing the premises aforesaid, and each of them, wholly disregarding the duty so by law enjoined upon him as aforesaid on the said 22d day of September in the year aforesaid, and from thence continually to the 18th day of November in the year 1900, at the borough of Manhattan, city and county aforesaid, did then and there continuously, unlawfully, and willfully wholly neglect and omit to. perform such duty as aforesaid, and then and there continuously did willfully and unlawfully wholly neglect and omit to use and exercise, or cause to be used and exercised, all proper, reasonable, and effective means, and all means within his power as such captain of police, for the prevention of the keeping and maintenance of the said houses of ill fame and prostitution, and of each of them, and of the solicitation for the purpose of sexual intercourse therefrom and in front thereof, and for the detection and arrest of the person or persons keeping and maintaining the same; and then and at all the times aforesaid did there continuously, willfully, and unlawfully wholly neglect and omit to carefully observe and inspect the said houses of ill fame and prostitution, or to cause the same to be carefully observed and inspected; and then and at all times aforesaid continuously did willfully and unlawfully wholly neglect and omit to repress and restrain, or cause to be repressed and restrained, such unlawful and disorderly conduct and practices therein and in front thereof; and then and at all times aforesaid did there continuously, unlawfully, and willfully wholly neglect and omit to enforce and prevent violations of the laws of this state in respect to the keeping and maintenance of such houses of ill fame and prostitution, but, on the contrary, then and thereafter continually to the 18th day of November in the year 1900, at the borough of Manhattan. city and county aforesaid, did unlaw-fully and willfully suffer and permit the said houses of ill fame and prostitution openly and notoriously to be kept and maintained at and in the buildings aforesaid, and the said unlawful and disorderly conduct and practices to be openly and notoriously committed therein and in front thereof, without any interference on the part of him, the said John D. Herlihy, such public officer and captain of police as aforesaid, and without any proper, reasonable, or effective endeavor on his part towards the suppression thereof or the detection and arrest of the person or persons keeping and maintaining the same, and without any proper, reasonable, or effective endeavor on his part for the enforcement and preventing the·violations of the laws of this state in respect to the keeping and maintenance thereof; against the form of the statute in such case made and provided, and against the peace of the people of the state of New York, and their dignity."

Argued before VAN BRUNT, P. J., and HATCH, McLAUGH-LIN, O'BRIEN, and INGRAHAM, JJ.

Howard S. Gans, for the People.
Abram I. Elkus, for respondent.

McLAUGHLIN, J. This appeal is from a judgment allowing demurrer to an indictment. The defendant, during the time stated in the indictment, was a police captain in the city of New York, in command of the Twelfth precinct in that city. The indictment charged him with the crime of willfully omitting to perform a duty enjoined upon him by law as a public officer, in that, as such public officer, he knowingly permitted a large number of houses of prostitution to be maintained within that precinct from the 22d day of September, 1899, continually until the 18th day of September, 1900, and knowingly and willfully omitted and neglected to suppress said houses, or any of them, or to use the means within his power as such officer for that purpose. The demurrer was sustained by the learned recorder, as appears from the opinion delivered by him, upon the ground that the indictment did not contain a plain and concise statement of the acts constituting the crime; and his ruling is sought to be sustained on the appeal substantially upon the same ground, and also upon the further ground that the indictment is bad for duplicity, in that more than one crime is charged therein.

A person who keeps a house of ill fame or prostitution is guilty of a misdemeanor. Section 322, Pen. Code. Such a house is a common nuisance, and as such it was the duty of the defendant, as a captain of the police in charge of the precinct stated in the indictment, to suppress and prevent the maintenance of the same. It was his duty, as such police officer, to prevent all violations of law in his precinct, and restrain the violators, so far as possible; and, if unable to prevent such violations, then to arrest the offenders, and bring them to punishment. Weiss v. Herlihy, 23 App. Div. 608, 49 N. Y. Supp. 81. This was the general duty resting upon him as a peace officer. But, in addition to this, he had a special duty with reference to houses of prostitution enjoined upon him by statute. Section 315 of the Greater New York charter provides, in so far as the same is applicable to the question here under consideration, as follows:

"It is hereby made the duty of the police department and force at all times of the day or night, and the members of such force are hereby thereunto empowered, to especially preserve the public peace, prevent crime, detect and arrest offenders, * * * carefully observe and inspect all * * * houses of ill-fame or prostitution and houses where common prostitutes resort or reside, * * * and to repress and restrain all unlawful and disorderly conduct or practices therein; * * * to enforce and prevent the violation of all laws and ordinances in force in said city, and for these purposes to arrest all persons guilty of violating any law or ordinance for the suppression or punishment of crime or offences."

And if he willfully omitted to perform his duty as a peace officer or the duty specifically enjoined upon him by statute, then he was guilty of a misdemeanor. Sections 117, 154, Pen. Code. Every public officer upon whom a duty is imposed is bound to perform that duty, and for a willful omission so to do an indictment will lie. Thus it has

been held that commissioners of excise are guilty of a misdemeanor for willfully omitting to pass upon a complaint for the revocation of a license (People v. Meakim, 133 N. Y. 214, 30 N. E. 828); also for a willful omission of duty in granting or refusing a license (People v. Norton, 7 Barb. 477); for the willful omission of a mayor of a city to notify a county attorney of the existence of a certain liquor saloon (State v. Gluck, 49 Kan. 533, 31 Pac. 690); for the neglect or failure of a marshal to arrest the perpetrator of a crime committed in his presence (Shaw v. Mayor, etc., 21 Ga. 280); for the failure of a game warden to arrest a person whom he saw violating the game laws (State v. Darling, 89 Me. 400, 36 Atl. 632); also for the failure of a chief of police to exercise the power which he had to suppress a mob (Hopewell v. State, 22 Ind. App. 489, 54 N. E. 127). Numerous other instances might be given where public officials have been indicted for the willful omission to perform duties imposed upon them by virtue of their offices.

Nor do we understand that it is seriously questioned, as a general proposition, that a public officer who willfully omits to discharge a duty imposed upon him by virtue of his office is guilty of a misdemeanor; but it is urged that the defendant here cannot be punished for such omission, because sections 117 and 154 of the Penal Code apply only to the omission to discharge a duty connected with the office "where no special provision shall be made for the punishment of such delinquency," and that there is a special provision provided by statute for the punishment of members of the police force of the city of New York who omit or neglect to properly discharge their duties. In this connection our attention is called to certain sections (270–272, 300) of the Greater New York charter, which, in effect, provide that the government and discipline of the police department of the city of New York shall be lodged in the police commissioner, in whom there has been vested the power of imposing fines and dismissing from the force as a punishment or penalty for the omission of duty; and that this provision is a special one for the punishment of officers of the police force of that city who omit to perform the duties imposed upon them within the meaning of sections 117 and 154 of the Penal Code. But there is no force in this claim. The same contention was made in People v. Meakim, 133 N. Y. 214, 30 N. E. 828, and it was there held that the special provision referred to in these sections is some special provision of the criminal law imposing a criminal liability for the neglect of duty, and that neither liability to a fine nor liability to removal from office answers the requirements of the excepting clause.

This brings us to the consideration of the main questions presented, viz.: (1) Whether the indictment contains a plain and concise statement of the acts constituting the crime; and (2) whether more than one crime is charged in the indictment.

1. The crime charged in this indictment is the willful omission to perform a duty enjoined by law upon the defendant as a police officer, and the fact specified as showing that the defendant is guilty of the crime charged is that he did not suppress and prevent the maintenance of houses of ill fame in his precinct at the time stated. The

allegation is that there were certain houses of ill fame in which unlawful and disorderly conduct and practices were committed, and divers common prostitutes and disorderly persons resorted to and resided therein, and solicited men, etc., in front thereof. This is a proper allegation as characterizing the houses. While I am of the opinion that the words "houses of ill fame" would have been sufficient without any further description, it certainly does not take from the sufficiency of the statement of the acts constituting the crime to add thereto a statement of acts which constitute the houses of the character described. The charge is that the defendant did not suppress and prevent the maintenance of houses of this character, and the further statements contained in the indictment are simply added to show their character, nothing more and nothing less. "Certain houses of ill fame" are the words, in which unlawful and disorderly practices were committed, to which common prostitutes resorted, in which they resided, and in front of which they solicited, etc. It is the omission of duty on the part of the defendant to suppress and prevent the maintenance of houses of this character of which the people complain. Hence the words in the indictment that the defendant omitted and neglected "to use and exercise * * * all means within his power * * * for the prevention of the keeping and maintenance of the said houses of ill fame, * * * and for the detection and arrest of the person or persons keeping and maintaining the same," etc. The meaning of the words "houses of ill fame" is well understood, and these words of themselves, irrespective of any other description, are sufficient in an indictment charging an officer with an omission of duty in respect thereto. Where a statute defines a crime, it is sufficient to charge its commission in the language of the statute. People v. Weldon, 111 N. Y. 569, 19 N. E. 279; People v. Hulett (Sup.) 15 N. Y. Supp. 630. The additional facts charged in this indictment are a mere amplification of the phrase "houses of ill fame." They are the statement of acts which tend to and make houses of this description. Nor is the indictment defective because it fails to state the facts as to each of the alleged houses. State v. Foy, 98 N. C. 744, 3 S. E. 524. Neither is it necessary to state the names of the keepers of the houses or the names of the persons guilty of the alleged disorderly conduct and practices, etc.

2. This brings us to the remaining question, and that is whether the indictment charges the defendant with the commission of more than one crime. We are of the opinion that it does not. It is true that, if the defendant willfully and knowingly permitted one house of ill fame to be maintained within his precinct, he was guilty of the crime charged in this indictment; but the allegation that he permitted over 100 of such houses to be maintained does not render him the less guilty, nor does it charge him with an additional offense. The crime is the same. The gravamen of the offense alleged is neglect of duty in failing to suppress or close such houses, and in this respect the charge is analogous to one of conspiracy, which consists in the unlawful and corrupt agreement of the parties to it to do an unlawful act, which agreement is entirely distinct from the

unlawful act which the parties had in mind when they entered into the agreement or conspiracy. For this reason it has been held that parties who enter into a conspiracy are, by that act, guilty of but one offense, whether their agreement is to commit one or many crimes. State v. Kennedy, 63 Iowa, 200, 18 N. W. 885. Here the offense of which the defendant is charged, as already indicated, consists in his willful omission and neglect of duty to suppress and prevent the maintenance of houses of ill fame within his precinct at the time specified. This is the charge, and, if he is guilty of it, then he is guilty of but one offense, and it matters not whether there be one house or upwards of 100, as alleged. People v. Buddensieck, 103 N. Y. 487, 9 N. E. 44, 57 Am. Rep. 766. A neglect of duty may be predicated upon one act or omission or upon many acts; that is, as a continuing omission of duty. Thus, it was held in Bork v. People, 91 N. Y. 5, that "where an offense may be committed by doing any one of several things, the indictment may, in a single count, group them together, and charge the defendant to have committed them all; and a conviction may be had upon proof of commission of any one of the things, without proof of the commission of any of the others." And to the same effect is Woodford v. People, 62 N. Y. 117, 20 Am. Rep. 464. In that case an indictment charged the defendant with setting fire to 35 dwelling houses owned by different persons, and, an objection being made that the indictment charged more than one crime, the court disposed of the objection, saying it (referring to the indictment) charges the burning of a number of houses by a single act, "and a conviction or acquittal upon such an indictment would be a bar to an indictment for burning any other house burned by the same act. There has been but one crime committed in respect of all the houses." So here a conviction or acquittal of the defendant upon the indictment under consideration would be a bar to an indictment for an omission or failure on his part to discharge a duty resting upon him as a public official for a failure to suppress or prevent the maintenance of any of the houses specified.

It follows, therefore, that the learned recorder erred in allowing the demurrer to the indictment, and for that reason the judgment appealed from must be reversed. All concur; VAN BRUNT, P. J., in result.