## Supreme Court—Appellate Division, Third Department.

May, 1902.

## THE PEOPLE v. THOMAS J. DIAMOND.

(App. Div. 281.)

**1. INDICTMENT.**

The inspection of the minutes of the grand jury is not a right which any indicted person possesses, and the leave to examine lies in the discretion of the court.

**2. SAME—GRAND JURY MAY EXAMINE IN THE FIRST INSTANCE.**

The grand jury is a court of original inquiry, and its scope of inquiry is not limited to cases where a preliminary examination has been had before a magistrate.

**3. SAME.**

The facts, concerning a disorderly house, collected by a faithful discharge of duty by a police captain could be used for either one of two purposes, either to repress the crime or to hold the proprietress of the house *in terrorem* for tribute, and where the testimony is wholly barren of any proof of defendant to use it to repress it was sufficient to support a verdict that he wilfully omitted to discharge his duty.

**4. SAME.**

A modified effort to enforce the laws is not sufficient, nor have the police officers any discretion in the premises.

**5. EVIDENCE.**

Upon the trial of a police captain for failing to suppress a house of prostitution, weekly reports of defendant stating that the place in question was not a house of prostitution are admissible in evidence where limited by the court to the question of the wilfulness of defendant in failing to discharge.

APPEAL by the defendant, Thomas J. Diamond, from a judgment of the Supreme Court in favor of the plaintiff, entered on the 27th day of November, 1901, upon the verdict of a jury convicting the defendant of the crime of wilfully omitting to perform a duty enjoined by law upon him, and also from various orders and decisions made in the intermediate proceedings in the action.

The appellant was a captain of police in command of the fifteenth precinct in the city of New York. The indictment upon which he was tried charges him with the violation of his

duty as a public officer between October 1, 1900, and May 1, 1901, and the specification is that during all of that time one Lena Schmitt openly kept a house of prostitution at No. 27 Stuyvesant street, in said precinct, to the knowledge of defendant, and defendant wilfully omitted to observe and inspect the said house and to repress the same, and wilfully suffered the said house to be so openly and notoriously kept and maintained. The jury found a verdict of guilty.

Henry C. Henderson, J. Rider Cady, Frederick B. House and Louis J. Vorhaus, for the appellant.

Zeb A. Dyer, William Travers Jerome and Howard S. Gans, for the respondent.

KELLOGG, J.: The appellant presents several alleged grounds of error on this appeal, and considering them in the order in which the errors are alleged to have occurred we have:

First. A motion before the recorder in the city of New York for leave to inspect the minutes of the grand jury was denied except upon filing a stipulation cutting the defendant off from some statutory rights. If the defendant had a right to inspect the grand jury minutes, the condition imposed would have been a fatal error, but the inspection of such minutes is not a right which any indicted person possesses, and the leave to examine lies in the discretion of the court. (Eighmy v. People, 79 N. Y. 560.) We do not think the discretion was here abused. The motion was subsequently renewed and heard upon its merits by Justice HERRICK, and again denied. We see no error in this.

Second. There was no preliminary examination in defendant's case before a magistrate, and defendant urges that the indictment for that reason should have been dismissed. I do not think this contention can be upheld. The grand jury is a

court of original inquiry, and its powers and duties in this respect are stated in section 252 of the Code of Criminal Procedure. " The grand jury has power and it is their duty to inquire into all crimes committed or triable in the county and to present them to the court." Section 259 requires a grand juror to declare any crime he has knowledge of, and the grand jury must thereupon investigate. Nowhere, by words or inference, is the scope of inquiry limited to cases where a preliminary examination has been had before a magistrate.

Third. The demurrer to the indictment was overruled by the recorder. This was not error. The precise questions presented by this demurrer were passed upon in People v. Herlihy (66 App. Div. 534), and a lucid and exhaustive opinion was then written. The decision of the Appellate Division was affirmed in the Court of Appeals on the opinion of the court below (170 N. Y. 584). The indictment in that case was, in all essential particulars, like the indictment here.

Fourth. While the indictment was in the General Sessions, the defendant applied to a justice of the Supreme Court and obtained a stay of the trial and all proceedings to continue until the decision of a motion to be made to transfer the case to the Supreme Court, and to have the trial transferred to some county outside of New York. This stay was modified by the Supreme Court, held by another justice, and the stay as modified was of the trial only. This modified stay was presented to the recorder before the same had been entered of record, and, on its presentation, the recorder disposed of the motions and demurrer hereinbefore mentioned. The error alleged here is the disposition of such matters before the entry of the modified order. I do not think it necessary to determine whether a justice of the Supreme Court has power to interfere with proceedings in a case in the Court of General Sessions of New York before the case has been transferred to the Supreme Court. The stay as modified was operative from the moment it was made, if it was effective at all. Its subsequent entry

related back to the time it was granted and made lawful all proceedings in the meantime.

Fifth. The contention of the learned counsel for the defendant that "the facts adduced in support of the indictment do not constitute a crime" we interpret to mean that the evidence is insufficient to support the verdict of the jury that defendant was guilty of wilfully omitting to perform a duty imposed touching the repression of the house kept by Lena Schmitt, and this, of course, involves the question of whether the court erred in refusing to advise the jury to acquit and all questions touching the weight of the evidence. The two witnesses for the People, Lena Schmitt and Rosa Greenberg, testify to so many pertinent and material facts bearing upon the defendant's knowledge of the character of the house, which, if untrue, might have been easily disproved by other witnesses and was not, that the jury might well have given full credence to their testimony, though it was the testimony of admitted prostitutes. If their testimony needed corroboration, it was corroborated by these tacit admissions. It was further corroborated by all the other admitted surrounding facts and circumstances and denied by none. There is nothing in the testimony or lack of testimony which admits of a reasonable doubt as to defendant's knowledge, as early as November, 1900, that this house was a notorious house of prostitution and was openly advertised and run as such and so continued to May 1, 1901, as charged in the indictment. That defendant wilfully omitted to take the steps it was his duty to take to repress the maintenance of a house of prostitution here is abundantly shown. It is admitted that he did not make any arrest of Lena Schmitt, the proprietress, during the time stated. He did not disclose to any superior or to any magistrate or to the district attorney any of the facts of which he was possessed. Instead of using the facts to repress the crime of maintaining a house of prostitution, he apparently repressed the facts. He kept them to himself, hoarded them, concealed them from all of the officials

who had power to repress the crime, even if defendant had not.
He did more; he weekly reported to his superiors that ·this
house was not a house of prostitution when he knew that it
was.    On February 25, 1901, a letter from the district attor-
ney's office was referred to defendant.    The letter notified him
that the district attorney's office had been informed that this
was a disorderly house.    The defendant, by letter dated March
14, 1901, replied that he " could obtain no evidence of any
violation of the law thereat."    This, from the testimony, the
jurors had a right to believe to be false, as they also had a right
to believe the weekly reports to be false.    This, upon the ques-
tion as to whether the neglect or omission to perform his whole
duty was wilful, had an important bearing.    Through his
own inspection of the house, his conversations with the pro-
prietress, Lena Schmitt, the officers he kept posted in front of
the house day and night, the officers in citizens' clothes who so
frequently visited the house, the defendant was presumably
possessed of facts sufficient to prove the crime it was his duty
to suppress.    That portion of the charter (Laws of 1897, chap.
378, sec. 315), which made it his duty to " carefully observe
and inspect " this house may have been performed.    The facts
collected by a faithful discharge of his duty could be used for
either one of two purposes.    They could be used to repress
the crime or they could be used to hold the proprietress of the
house in terrorem for tribute.    The legitimate use is that con-
templated by the law, to suppress, but the testimony is wholly
barren of any proof of any effectual attempt on the part of the
defendant to so use it.

The contention of the learned counsel for defendant that
defendant's duty did not extend to the suppression of houses of
prostitution in his precinct because the maintenance of such
a house is a crime under the Penal Code and not enumerated
as a crime in section 315 of the charter, is not tenable.    The
duty imposed by this section is to " enforce and prevent the
violation of all laws . . . in force in said city."    This

includes all the Penal Code laws so far as they are applicable to the city of New York, both felonies and misdemeanors. No argument is needed to support so plain a proposition. We are not impressed with the argument of the learned counsel, that a modified effort to enforce the laws is sufficient in any case, or that police officers have any discretion in the premises. The crime of which Lena Schmitt was guilty was not a technical offense; it required no spying to discover it. It was flagrant, open, notorious, a public defiance of the police, and all the effective machinery for punishment at their command; obviously this was not a case for regulation but a crime for suppression.

Sixth. The exceptions to the rulings of the learned court taken at the trial, respecting the admission of evidence, present no reversible error. The single exception urged upon defendant's brief to a ruling of the court admitting in evidence the weekly reports of the defendant stating in effect that No. 27 Stuyvesant street, kept by Lena Schmitt, was not a house of prostitution, had a direct bearing upon the question of the wilfulness of the defendant in failing to discharge his duty, and was by the court limited to that purpose. The exception to the language used by the district attorney in summing up does not appear to present any fatal error. And for all the reasons stated, the motions for a new trial and arrest of judgment were properly denied.

The judgment of conviction should be affirmed.

All concurred.

Judgment of conviction affirmed.