## THE STATE, Appellant, v. BOYD.

**Division Two, May 22, 1906.**

1. **INDICTMENT: Duplicity: Neglect of Duty by Police Officer: Bawdy Houses.** An indictment charging neglect of duty by a police officer in failing to prevent the setting up or keeping of bawdy houses in his district, is not bad for duplicity merely because it charges that the officer failed to suppress any one or all of the fourteen bawdy houses alleged to have been set up and maintained in his district.

2. **————: Police Officer: Neglect of Duty: Criminal Offense: No Charge of Willfulness or Corruption.** An information charging a police officer with neglect of official duty to suppress bawdy houses, having for its purpose, not only the removal of the defendant from office, but his conviction of a criminal offense which may deprive him of his property and his personal liberty, is fatally defective if it does not charge that his official misconduct was willful, corrupt or fraudulent.

Transferred from St. Louis Court of Appeals.

AFFIRMED.

*Chas P. Williams* for the State.

(1) The New York cases furnish the only direct authority. People v. Herlihy, 73 N. Y. Supp. 236, 170 N. Y. 584; People v. Diamond, 76 N. Y. Supp. 57. (2) Keeping a bawdy house is an indictable misdemeanor in the city of St. Louis. G. S. 1865, chap. 206, sec. 19; State v. Clarke, 54 Mo. 17; State v. DeBar, 58 Mo. 395; State v. Lewis, 5 Mo. App. 465; Laws 1879, p. 89; R. S. 1899, sec. 2197. (3) There is direct statutory imposition of the duty to prevent and arrest such offenders in the ctiy of St. Louis. R. S. 1899, secs. 6232, 6212, 6213. These statutes embody in these respects a command to individual policemen. State v. Grant, 76 Mo. 236; State v. Holcomb, 86 Mo. 380; State v. Hancock, 73 Mo. App. 19. (4) The use of the word "corruptly" is not necessary. People v. Bedell, 2 Hill 196; Rex v. Holland, 5

D. & E. 623; People v. Norton, 7 Barb. 479; Rex v. Saintsbury, 4 D. & E. 457; People v. Herlihy, 73 N. Y. Supp. 236; State v. Miller, 100 N. C. 543; State v. Ragsdale, 59 Mo. App. 590; State v. Grassle, 74 Mo. App. 316; State v. Gardner, 2 Mo. 23, distinguished. (5) The question of duplicity: State v. Foy, 98 N. C. 745; People v. Herlihy, 73 N. Y. Supp. 236; Woodford v. People, 62 N. Y. 117; State v. Heinze, 45 Mo. App. 403.

*Boyle, Priest & Lehmann, Thomas J. Rowe* and *Simon S. Bass* for respondent.

(1) The indictment is mutifarious, and bad for that reason. 1 Bishop's New Crim. Proc. (4 Ed.), sec. 432; State v. Jamison, 90 N. W. 622; People v. Flaherty, 57 N. E. 73; People v. Williams, 65 Pac. 323; State v. Healy, 50 Mo. App. 243; State v. Harrison, 62 Mo. App. 112; State v. Fox, 148 Mo. 517. (2) The indictment does not show knowledge by defendant of any of the matters concerning which it is alleged he was guilty of neglect. State v. Leigh, 3 Dev. & Bat. 127; State v. Darling, 36 Atl. 632. (3) The indictment pleads only legal conclusions, and states no facts showing a neglect of duty. State v. Burke, 151 Mo. 142; U. S. v. Hess, 124 U. S. 483; Railroad v. Comm'rs, 19 Fed. 679; Ex parte Jackson, 45 Ark. 158. (4) The alleged neglect of duty must be shown to be corrupt. State v. Gardner, 2 Mo. 23; State v. Hein, 50 Mo. 362; State v. Pinger, 57 Mo. 243; State v. Grassle, 74 Mo. App. 313; Smith v. Sing, 68 Cal. 324; Triplett v. Numter, 50 Cal. 645.

FOX, J.—This cause is certified to this court by the St. Louis Court of Appeals. The respondent was indicted for official misconduct. To the indictment he interposed a demurrer, which was by the St. Louis Court of Criminal Correction sustained, and from the action of the court upon the demurrer the State prosecuted its appeal to the St. Louis Court of Appeals. In

that court the assignments of error were heard and the conclusions of the court announced in an opinion by BLAND, J., REYBURN, J., dissenting. The dissent by one of the judges of that court furnished the basis for certifying the cause to this court.

The majority opinion of the St. Louis Court of Appeals is as follows:

"Omitting caption, the indictment is as follows: 'The grand jurors of the State of Missouri, within and for the body of the city of St. Louis, now here in court duly impaneled, sworn and charged, upon their oath present, that at the city of St. Louis aforesaid, and on the fifteenth day of February, in the year one thousand and nine hundred and three (and for a long time prior thereto), one Samuel J. Boyd was a public officer and a person holding trust and appointment, within and for the city of St. Louis and State of Missouri, to-wit, a member of the metropolitan police force and department of the city of St. Louis, of the grade and designation of captain of police, duly appointed, enrolled and employed by the Board of Police Commissioners of said city, assigned and detailed to, and the principal officer of police, and in command of that portion of territory of said city known and designated, for the purpose of police government, and duly established by the said Board of Police Commissioners of said city, as the Fourth Police District of said city; and that the said Samuel J. Boyd was then and there (and for a long time had been) by virtue of the laws of the State of Missouri, a state officer.

" 'That he, the said Samuel J. Boyd, was then and there (and for a long time prior thereto had been) duly appointed and designated as such captain of police by the said Board of Police Commissioners of said city, under and by virtue of the laws of the State of Missouri, and was then and there (and for a long time prior thereto had been) duly commissioned, sworn and assigned and acting as such captain of police, and in com-

mand, control, supervision and direction, for the purposes of police government and to enable the said Board of Police Commissioners to perform the duties imposed upon them by law, of the said Fourth Police District of said city.

" 'That under and by virtue of the laws of the State of Missouri it was the official duty of the said Board of Police Commissioners of said city, and of every member of the said police force and department of said city appointed, enrolled and employed as such by the said Board of Police Commissioners, and the official duty of him, the said Samuel J. Boyd, as such member of said police force and department, and as such captain of police, and as such police officer, and as such state officer, at all times of the day and night, within the boundaries of said city, to preserve the public peace, to prevent crime and arrest offenders, to prevent and remove nuisances on all streets and highways and other places, and to see that all laws of the State of Missouri, relating to vagrants and disorderly persons, were enforced.

" 'That he, the said Samuel J. Boyd, as such captain of police, then and there (and for a long time prior thereto) had under his command and subject to his orders numerous sergeants and patrolmen of police, members of the said police force and department, and was vested with adequate power and authority as such captain of police in command of said Fourth Police District, and as such public and state officer, for the proper and efficient performance of the duty aforesaid.

" 'That at the said city of St. Louis, and on the said fifteenth day of February, in the year one thousand nine hundred and three (and for a long time prior thereto) and within the territory so known and designated as the said Fourth Police District of said city so commanded by him, the said Samuel J. Boyd, as captain of police as aforesaid, there were and had been, for a long time, continuously, openly and notoriously set

up, kept and maintained certain common bawdy houses and brothels; and that then and there and for a long time prior thereto unlawful and disorderly conduct and practices were committed in each and all of said houses, and divers common prostitutes and bawds, vagrants and disorderly persons resorted to and resided in said houses for the purpose of common prostitution and bawdry, and solicited men for the purpose of sexual intercourse therefrom and in front thereof; which said common bawdy houses and brothels were so set up, kept and maintained in said Fourth Police District in certain buildings situated upon certain streets and highways of said city, known and designated as North Twelfth street, North High street, Linden street and Gay street; which said buildings were known and designated respectively by the following street numbers, to-wit, the building designated as number 703 North Twelfth street; the building designated as number 705 North Twelfth street; the building designated as number 707 North Twelfth street; the building designated as number 709 North Twelfth street; the building designated as number 711 North Twelfth street; the building designated as number 713 North Twelfth street; the building designated as number 721 North Twelfth street; the building designated as number 726 North Twelfth street; the building designated as number 821 North Twelfth street; the building designated as number 1205 Linden; the building designated as numbers 1208 and 1210 Linden street; the building designated as number 1235 Linden street; the building designated as number 721 North High street; wherein the said common bawdy houses and brothels were then and there (and for a long time had been) so continuously, openly and notoriously set up, kept and maintained respectively by Fannie Adams, Rose Brown, Birdie Hill (alias Hall), Becky Weinstein, Lena Cohen (alias Smith), Ida Smith, May Smith, Annie Brown, Becky Schwartz, Martha Sharp, Annie

Smith, R. Johnson, Lillie Smith and May Connor; that
it was the official duty as aforesaid of the said Samuel
J. Boyd, as captain of police as aforesaid, in command
of said Fourth Police District as aforesaid, and as such
police officer and state officer as aforesaid, to arrest
and cause to be arrested the said Fannie Adams, Rose
Brown, Birdie Hill (alias Hall), Becky Weinstein, Lena
Cohen (alias Smith), Ida Smith, May Smith, Annie
Brown, Becky Schwartz, Martha Sharp, Annie Smith,
R. Johnson, Lillie Smith and May Connor, for viola-
tion of the law and for crime in so setting up, keeping
and maintaining said common bawdy houses and
brothels as aforesaid in said city of St. Louis, that
they might be dealt with according to law, and to pre-
vent said violation of law and crime, and to prevent and
remove such common bawdy houses and brothels as
common nuisances, and to arrest and cause to be ar-
rested said common prostitutes, bawds and disorderly
persons as vagrants.

" 'That nevertheless the said Samuel J. Boyd, be-
ing such captain of police as aforesaid, and command-
ing said Fourth Police District, as aforesaid, and being
such public officer and state officer as aforesaid, and
then and there (and for a long time prior thereto) well
knowing the premises as aforesaid, did then and there,
unlawfully and willfully, wholly neglect and omit to per-
form his said official duty as aforesaid, and then and
there continuously did unlawfully and willfully wholly
neglect and omit to use and exercise and to cause to be
used and exercised all proper, reasonable and effective
means within his power and authority as such captain
of police, and as such public officer and state officer, for
the prevention of the setting up, keeping and maintain-
ing of the said common bawdy houses and brothels and
each of them, and for the detention and arrest of the
persons so setting up, keeping and maintaining the
same.

" 'But on the contrary, he, the said Samuel J.

Boyd, captain of police as aforesaid, and public officer and state officer as aforesaid, did then and there (and for a long time prior thereto) unlawfully and willfully suffer and permit the said common bawdy houses and brothels to be openly and notoriously set up, kept and maintained at and in the buildings aforesaid, and the said unlawful and disorderly conduct and practice to be openly and notoriously committed therein as aforesaid, without any interference on the part of him, the said Samuel J. Boyd, captain of police as aforesaid, and public officer and state officer, as aforesaid, and without any proper, reasonable and effective endeavor on his part toward the suppression thereof, or toward the detection and arrest of the persons setting up, keeping and maintaining the same, and without any proper, reasonable or effective endeavor on his part for the enforcement of the laws of this State respecting common bawdy houses and brothels and for the preventing of the violation of the laws of this State in respect to the setting up and keeping of common bawdy houses and brothels, and in respect to vagrants and disorderly persons, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the State.         W. Scott Hancock,

" 'Assistant Circuit Attorney.'

"A demurrer to this indictment was sustained and judgment rendered on the demurrer, from which judgment the State appealed.

"The indictment alleges the existence of fourteen separate and apart houses of ill fame, giving street and number of each house, in the police district over which the defendant, as captain of police, had jurisdiction, and alleges that it was his official duty to suppress these houses. The indictment further alleges that each of these fourteen houses was kept and presided over by a separate person giving the name of each of the fourteen proprietresses, and that it was the official duty of the defendant to arrest, or cause to be arrested,

these persons for violating the law against the keeping of the character of houses described. It also alleges that these houses 'were and had been, for a long time, continuously, openly and notoriously set up, kept and maintained; . .. . and that then and there for a long time prior thereto unlawful and disorderly conduct and practices were committed in each and all of said houses, and divers common prostitutes and bawds, vagrants and disorderly persons, resorted to and resided in said houses for the purpose of common prostitution and bawdry;' and that it was the official duty of the defendant, as captain of police, to arrest these persons, as vagrants.

"It is nowhere alleged in the indictment that the offenses, for the commission of which it is charged it was the duty of defendant to make arrests, were committed in the presence or view of defendant, but that their commission was open and notorious and well known to the defendant. At common law, a sheriff, constable, or other police officer, has no authority to make arrests without warrants, for a misdemeanor not committed in his presence or view, only in exceptional cases. The offenses charged in the indictment as having been committed, do not come within the exception. [State v. Holcomb, 86 Mo. 371; State v. Underwood, 75 Mo. 230; 1 Bishop on Criminal Procedure, sec. 638.] The inquiry, therefore, as to whether or not a police officer of the city of St. Louis may arrest for a misdemeanor not committed in his presence or view, becomes pertinent. The general duties required of police boards and police officers, in respect to the preservation of the peace, etc., are found in section 6212, Revised Statutes 1899. This section provides: 'They shall, at all times of the day and night, within the boundaries of said cities, as well on water as on land, preserve the public peace, prevent crimes and arrest offenders.' etc. It has been held under this section, or rather the one of which it is a substantial copy (sec. 5, Acts of 1860,

Laws of 1860-1, p. 448) that a police officer may, without warrant, arrest for a past misdemeanor, provided the officer making the arrest has reasonable grounds to suspect a misdemeanor has been committed (State v. Grant, 76 Mo. 236; State v. Hancock, 73 Mo. App. 19) and that members of the metropolitan police force are officers of the State and as such are authorized to make arrests for violation of the law of the State. [State ex rel. v. Mason, 153 Mo. 23; State v. Evans, 161 Mo. 95.] In the revision of 1899, they are declared to be both state and city officers (R. S. 1899, sec. 6232). Their duty as defined by section 6212, supra, is 'to preserve the public peace, prevent crime and arrest offenders.' In the discharge of this duty, they may arrest, without warrant, for a past misdemeanor, or to prevent the commission of any crime, or for the purpose of preventing a threatened breach of the peace. It has been well said that 'where it is the duty of an officer to make an arrest, he is bound to make it.' We conclude that the defendant not only had power to make arrests for misdemeanors not committed in his presence or view, but that it was his duty to arrest when he knew of the commission of any crime within the city.

"The indictment purports to charge three distinct omissions of official duty: First, the omission to take legal steps and to use lawful powers to prevent the setting up, keeping and maintaining of bawdy houses in the Fourth Police District. Second, the omission to arrest the fourteen keepers of bawdy houses in said district. Third, the omission to arrest the inmates and habitues of the fourteen houses in said district as vagrants.

"One of the grounds of demurrer is that the indictment is duplicitous and multifarious. Bishop, in his work on Criminal Procedure (vol. 1, sec. 432) says that duplicity 'consists in alleging, for one single purpose or object, two or more distinct grounds of complaint or defense, when one of them would be as effectual in law

as both or all.  Duplicity in an indictment is the joinder of two or more distinct offenses in one count.'  This definition of duplicity in an indictment is approvingly cited in State v. Fox, 148 Mo. 525.  In State v. Healy, 50 Mo. App. 243, it was held that two distinct publications of the same criminal libel constituted an offense in itself, and an indictment that charged both publications in one count was bad for duplicity.  In State v. Bridges, 24 Mo. 353, A and B were charged in the same count with betting on the result of an election, and C with becoming stakeholder.  The indictment was held bad for duplicity.

"The setting up or keeping of a bawdy house is a misdemeanor punishable by a fine of not less than two hundred nor exceeding one thousand dollars.  [R. S. 1899, sec. 2197.]  On conviction of vagrancy, the statute (sec. 2228, R. S. 1899) declares the punishment shall be 'by imprisonment in the county jail not less than twenty days, or by a fine not less than twenty dollars, or both such fine and imprisonment.'  If the defendant was put upon trial under this indictment on the charge of failure to arrest the fourteen keepers of the bawdy houses named and failure to arrest the inmates and habitues of said houses, six of the jurors might believe him guilty of an omission to arrest Fannie Adams, or any one or more of the fourteen keepers of the houses named, while the other six might believe him not guilty of an omission to arrest, as a vagrant, some inmates or habitues of some one or more of the fourteen houses, and thus the twelve agree on a verdict of guilty, when in reality only six agreed that the defendant was guilty of one and the same omission of duty charged in the indictment, and the other six believed him not guilty of that omission, but guilty of some other omission of duty as charged in the indictment.  [People v. Williams, 65 Pac. 323.]  If, therefore, the purpose of the indictment was to charge that the omission of duty

consisted in the failure to arrest the various offenders named and described in the indictment, it is bad for duplicity. But we do not think it was the intention of the pleader to charge the omission to arrest the offenders named as the gravamen of the offense.

"The indictment is, as near as may be, a copy of the indictment in the case of People v. Herlihy, 73 N. Y. Supp. 236, in which it was charged that there were one hundred and nine bawdy houses in the precinct over which defendant had jurisdiction as captain of police. The street and number of each house was stated. The neglect of duty charged was that the defendant as police officer, 'did there continuously, unlawfully and willfully wholly neglect and omit to enforce and prevent violations of the law of this State in respect to the keeping and maintenance of such houses of ill-fame and prostitution, etc. It was contended that the indictment was bad for duplicity, that it charged in one count one hundred and nine distinct offenses. In respect to this contention, the court said: 'We are of the opinion that it does not. It is true that, if the defendant willfully and knowingly permitted one house of ill-fame to be maintained within his precinct, he was guilty of the crime charged in the indictment; but the allegation that he permitted over 100 of such houses to be maintained does not render him the less guilty, nor does it charge him with an additional offense. The crime is the same. The gravamen of the offense alleged is neglect of duty in failing to suppress or close such houses, and in this respect the charge is analogous to one of conspiracy, which consists in an unlawful and corrupt agreement of the parties to it to do an unlawful act, which agreement is entirely distinct from the unlawful act, which the parties had in mind when they entered into the agreement or conspiracy. For this reason it has been held that parties who enter into a conspiracy are, by that act, guilty of but one offense, whether their agreement is to commit one or

many crimes. [State v. Kennedy, 63 Iowa 200.] Here the offense of which the defendant is charged, as already indicated, consists in his willful omission and neglect of duty to suppress and prevent the maintenance of houses of ill-fame within his precinct at the time specified. This is the charge, and, if he is guilty of it, then he is guilty of but one offense, and it matters not whether there be but one house or upwards of 100, as alleged.' The duty of the defendant, as police officer of the city of New York, was, under section 315, of the Greater New York charter, to 'carefully observe and inspect all . . . houses of ill-fame or prostitution and houses where common prostitutes resort or reside, . . . . and to repress and restrain all unlawful and disorderly conduct or practices therein,' etc. This section of the charter was a statutory warrant directed to the police officer, and comprehended all the houses of the character named in it, not one singly, but all singly and collectively, and directed the officer to repress the evil, whenever and wherever it was found to exist, whether in one or in many houses.

"By placing the indictment in the case of People v. Herlihy, 73 N. Y. Supp. 236, and the one in hand, side by side, we see that the pleader patterned after the New York indictment, and intended to charge, and did charge, the identical offense alleged in that indictment which, to use the language of the court in the New York case, 'consists in his willful omission and neglect of duty to suppress and prevent the maintenance of houses of ill-fame within his precinct at the time specified.' The gravamen of the offense charged against the defendant is that he willfully and unlawfully permitted houses of ill-fame to be set up, kept and maintained in his district at the time specified in the indictment. The allegations of omission of duty to arrest the offenders named and described are but amplifications of the principal fact charged, and the indictment is valid if there is any statute of this State, char-

ter provision or ordinance of the city of St. Louis, which makes it the duty of police officers to prevent the setting up, keeping and maintaining of bawdy houses in said city; there is no state statute that makes it the special duty of the board of police, no provision of the kind is found in the city's charter, nor has the legislative department of the city passed any ordinance making it the special duty of the board of police to prevent the setting up, keeping and maintaining of bawdy houses in the city limits. But the setting up or keeping of a bawdy house is a crime and it is the duty of the board of police to 'prevent crime and arrest offenders;' hence, it is the duty of the metropolitan police force to prevent the setting up or keeping of houses of ill-fame within the city limits. The only power, however, they may exercise in the performance of this duty is to arrest the offenders, when they are known to them. Under this view of the law, we think it competent, under the allegations of the indictment, to show that houses of ill-fame were permitted by defendant, as captain of police, to be notoriously kept in his district, with his knowledge, and that he made no reasonable effort to repress them by arresting the keepers and taking them before the courts of justice to answer for their crimes. As we construe the indictment it charges a single offense, to-wit, the omission of defendant as a police officer to take any steps to suppress any one or all of the fourteen bawdy houses alleged to have been set up and maintained in his district. To extend the scope of the indictment so as to cover every omission of duty incidentally charged, as failure to arrest any one or all of the fourteen keepers of the fourteen houses or any of their inmates would require the defendant on the same trial to defend against many separate and distinct offenses all charged in one count of the same indictment.

"Judgment reversed and cause remanded. *Goode, J.,* concurs; *Reyburn, J.,* dissents."

State v. Boyd.

OPINION.

It is apparent upon the record in this cause that this court is simply confronted with the one legal proposition, that is, does the indictment fail to properly charge the defendant with an offense under the law, and did the court correctly sustain the demurrer interposed to the indictment?

Upon a careful consideration of the able opinion by the learned and esteemed judge of the St. Louis Court of Appeals, so far as concerns the discussion of the legal proposition to which his attention was especially directed, that of ''duplicity,'' and the conclusions announced upon that question, we are of the opinion that the law was clearly and correctly announced. But upon grounds not discussed in the opinion, we have reached the conclusion that the indictment in this cause did not properly charge the offense, and the action of the court in sustaining the demurrer was proper.

The defendant is charged as a public officer of this State with a criminal offense, that of neglect of duty in the discharge of the duties of his office. While there is no dispute upon the proposition that under the provisions of law the penalty of removal from office may be imposed in the absence of a charge of improper motive in the conduct of the officer, yet when we undertake to convict him of a criminal offense, such as malfeasance and misconduct in the administration of the duties of his office, it is essential to this charge that an improper motive for such conduct be alleged. This principle was fully recognized by the framers of the organic law of this State. Section 7, article 14, Constitution of Missouri, provides: ''The General Assembly shall, in addition to other penalties, provide for the removal from office of county, city, town and township officers, on conviction of willful, corrupt or fraudulent violation or neglect of official duty.''

196 Sup.—5

This provision of the Constitution clearly contemplated that the General Assembly had provided for the imposition of penalties upon officers for violation or neglect of duty, and with equal clearness indicated the conception of the framers of that provision as to the essential elements of such wrongful acts and neglect of the officials which subjected them to the imposition of such penalties, that is, "willful, corrupt or fraudulent violation or neglect of  official duty." In other words, this constitutional provision  simply means to recognize that the General Assembly had provided penalties for the willful, corrupt or fraudulent  violation or neglect of duty by public officials, and then  commanded it in addition to this to make provision for the "removal from office of county, city, town or township officers." It will be noted that the authority under this provision to provide for the removal from office of the officers designated is not restricted  to the grounds of removal specified in section 7 of the Constitution, that is, "willful, corrupt or fraudulent violation or neglect of official duty," but it is a delegation of power to make such reasonable and proper provisions for the removal of officers as may seem just (in addition to the penalties imposed for the offenses especially designated), even though the act of the officers may not amount to a willful, corrupt or fraudulent violation or neglect of  duty. [State ex rel. v. Walbridge, 119 Mo.  383.]

The statute upon which this prosecution is predicated provides: "Every officer or person holding any trust or appointment, who shall be  convicted of any willful misconduct or misdemeanor in office, or neglect to perform any duty enjoined on him by law, where no special provision is made for the punishment of such misdemeanor, misconduct or negligence, shall be punished by fine not exceeding five hundred dollars, or by imprisonment in the county jail not exceeding one year, of by both such fine and imprisonment." This statute

was in full force at the time of the adoption of the constitutional provision herein referred to, and the conclusion is irresistible that the framers of section 7 of our Constitution had in mind all provisions of the law imposing penalties upon officers for official misconduct, including the statute upon which this indictment is based. It could not be otherwise, for this statute, in express terms, imposes a penalty for violation or neglect of official duty. This being true, we have a construction by the organic law of this State as to the character and nature of the violation or neglect of official duty which subjects the offender to the penalty imposed by the statute, upon which this prosecution is predicated, that is, for a "willful, corrupt or fraudulent violation or neglect of official duty."

In a very early period of the history of this State, and of the organization of this court, there was in judgment before this court, in State v. Gardner, 2 Mo. 23, the question of the essentials of a valid indictment for misconduct in office. While the terms of the statute applicable to that case were in many respects unlike the provisions of the statute now under discussion, yet the principles announced in that case, and the subsequent cases approving them, indicate very clearly the views of this court upon the proposition confronting us. The statute in force in the Gardner case denounced any willful misconduct by any justice of the peace, sheriff, coroner or constable. The indictment charged the offense in the language of the statute. McGirk, C. J., speaking for this court, said: "The point made in this case is, whether the indictment charges any misdemeanor. The words of the law are: 'On conviction for any willful misdemeanor.' The words of the indictment are: 'That the defendant willfully issued a summons,' etc. And the circuit attorney insists that it being clearly a void summons, is a misdemeanor; and it having been alleged to be willful, the statute is satisfied and the indictment good. I am of a contrary opin-

ion. In this case two things are required: First, that the indictment should show facts as would amount to a misdemeanor independent of the word willful, and to make this out the indictment should charge the act to have been done knowingly and corruptly, and secondly, that the act should be alleged to be willful.''

In State v. Hein, 50 Mo. 362, notwithstanding the statute expressly enumerated the character and nature of the conduct of the officer which would constitute the offense, yet being a charge against an officer for malfeasance in office, the same strict rule in respect to allegations, that the act, or omission to act, was corruptly and knowingly done, was required. This case so clearly indicates the views of this court as to the essential elements of a charge against a public officer for misconduct in office, that we feel warranted in quoting fully from it. WAGNER, J., in treating the proposition in that case, said: ''This was an indictment against the justices of the Cooper County Court, and charges 'that said parties, being then and there justices of the county court of said county, duly elected, etc., did then and there, under color of their offices as such justices, unlawfully, willfully, and by a gross abuse of authority in their official capacity, and under color of their said offices as justices of the said Cooper County Court, draw and order to be drawn on the treasurer of said county a warrant,' etc. The indictment was demurred to as insufficient, and the demurrer was sustained and the State appealed to this court. The section of law under which this indictment was framed declares that 'every person exercising or holding any office or public trust who shall be guilty of willful and malicious oppression, partiality, misconduct or abuse of authority in his official capacity, or under color of his office, shall, on conviction, be punished,' etc. [Wagn. Stat. p. 487, sec. 16.] The act of which the officers must be guilty must be a willful act, but the indictment to be good should contain other averments.

It should show such acts as would amount to the imputed crime independent of the word 'willful;' and to make this out, the indictment should charge the act to have been done knowingly and corruptly, and the act should be alleged to be willful.''

It will be observed that the statute in that case expressly provided that any officer ''who shall be guilty of willful and malicious oppression, partiality, misconduct or abuse of authority in his official capacity or under color of his office, shall be punished,'' etc., yet it was held that an indictment in the language of the statute was insufficient, and being an officer it should be charged that the acts were knowingly and corruptly done. The terms of the statute upon which this indictment is based is far less descriptive of the offense than the one in judgment in the Hein case; the offense under this statute, as applicable to this case, consists of ''willful neglect to perform any duty enjoined upon the officer by law.''

If the principle of pleading announced in the case last cited is correct, and is longer to be followed, then we are unable to assign any reason why it should not be applicable to the case at bar. When the two statutes are fully considered, there is much stronger reason for applying the strict rule of pleading to the one under discussion than the other. In State v. Pinger, 57 Mo. 243, the statute upon which the prosecution was based provided, among other things, ''that if any member of a county court shall knowingly vote for the appropriation, disposition or disbursement of any money or property belonging to the county, for any purpose not directed and warranted by law, such person so voting for such illegal appropriation, disbursement or disposition of any such money or property shall be deemed and taken, if such illegal appropriation, etc., be in fact effected, to have feloniously embezzled and converted to his own use,'' etc. The indictment charged the offense in the language of the

statute, and the only question was whether the indictment contained necessary averments to charge a substantial offense. The court in that case, after reviewing the principles announced in the Gardner and Hein cases, and fully approving them, proceeds to the discussion of the case it had in hand, and said: "Now the act we are construing says, that if the officer shall knowingly vote for the appropriation, for any purpose not directly warranted by law, he shall be deemed, etc. The indictment essentially follows this language, but that is not sufficient. . Of course the officer must knowingly do the act or cast the vote; if it was not so done, it would not constitute a crime under any circumstances. But he might do it intelligently and knowingly; and it might be a matter of doubt whether the appropriation was justified or warranted by law or not. If upon a construction of the law it was determined that the appropriation was not directed or warranted, surely the law would not criminally punish the officer for a mistaken judgment. It would be necessary, therefore, to make the further averment that he was actuated by some dishonest or corrupt motive. Hence, the best authorities are in harmony with the law, as previously adjudged by this, court. In speaking on this subject, Wharton says, 'It is generally necessary to constitute the offense that the motive should be corrupt; and that in an indictment against an officer of justice for misbehavior in office, it is necessary that an act imputed as misbehavior be distinctly and substantially charged to have been done with corrupt, partial, malicious or improper motives, and above all with the knowledge that it was wrong, though no technical words in framing the charge will be required.' [3 Whart. Crim. Law, secs. 2520-21.] This doctrine is supported with a great array of authorities." To the same effect is State v. Kite, 81 Mo. 97; State v. Newkirk, 49 Mo. 85.

Appellant directs our attention to State v. Ragsdale, 59 Mo. App. 590. The conclusions reached in this

case in no way conflict with the views expressed in that case. The Ragsdale case was correctly decided upon the statute upon which the charge was based. It is true the information was against a public officer, but the statute denouncing the offense charged expressly designated the essential improper motive necessary to constitute the offense, hence an information in the language of the statute was sufficient. The principles of the cases upon which the conclusions in the case at bar are based are fully recognized by the learned judge in the Ragsdale case.

State v. Grassle, 74 Mo. App. 313, is in accord with the views herein expressed, except the intimation in the opinion that it is only necessary to allege that the act was knowingly and corruptly done, when the charge is against a judicial officer. The statute imposing a penalty upon officers for misconduct in office, or any willful misdemeanor or neglect of official duty, makes no such distinction, and the rule must be treated as applicable to all alike.

The Constitution of this State, as herein pointed out, recognized that the penalties imposed upon officers, as provided by the statute upon which this prosecution rests, was for willful, corrupt or fraudulent violation or neglect of official duty, and then commanded the General Assembly to make additional provisions for the removal of officers designated by the Constitution; hence, after a careful and thorough consideration of this subject, we have reached the conclusion that while officers may, in pursuance of reasonable enactments by the General Assembly or a municipality, be removed and the penalty of deprivation of office imposed upon them for misconduct in office, or inattention or neglect of duty, in the absence of a charge of any improper motive, yet under the law as it now stands, when it is undertaken to visit upon them the penalties of the statute for the commission of a criminal offense for such misconduct in office, it is essential that they be charged

with willful, corrupt or fraudulent violation or neglect of official duty.

Ample provision is made for disposing of officials who fail to personally devote their time to the discharge of the duties of the positions for which they have been selected. [Sec. 18, art. 2, Const. of Mo.]

Doubtless the defendant in this cause, who was a captain in the police department, was under the supervision of the Board of Police Commissioners, and the chief of police, and for any failure to perform the duties incumbent upon him there is ample provision for removing him from office for such failure, but when the State seeks to convict him of a criminal offense which may deprive him not only of property, at least sufficient to pay the fine imposed, but as well his personal liberty, we are of the opinion that it is essential to the validity of a charge of this character to embrace in the allegations some improper motive in the malfeasance charged in the indictment.

Entertaining the views as herein expressed, and the indictment failing to contain the essential averments necessary to constitute the offense as herein indicated, the judgment of the St. Louis Court of Criminal Correction, upon the demurrer to the indictment, should be affirmed, and it is so ordered.

*Gantt, J.,* concurs; *Burgess, P. J.,* absent.