## STATE OF MISSOURI, Respondent, v. JAMES DUNI-VAN, Appellant.*

### In the Springfield Court of Appeals, March 6, 1925.

1. **CRIMINAL LAW: Motion to Suppress Evidence: Success of Motion to Suppress Evidence Depends on Legality of Search and Seizure and not Time of Arrest.** The success of a motion to suppress evidence alleged to have been obtained by unlawful search and seizure depends on legality of search and seizure and not on question when arrest was made.

2. **ARREST: Peace Officers: Officers Have no Right to Arrest or Search Without Warrant Except in Stated Circumstances.** An officer without a warrant has no right to detain the citizen and search his person or effects except where a felony has been committed, and there is probable cause to believe the person arrested is guilty thereof.

3. ———: ———: **Rule Stated as to Arrest in Misdemeanors Without Warrant.** In misdemeanors arrest without a warrant is unlawful, unless the offense is committed in the officer's immediate presence and view.

4. ———: **Time When Defendant Arrested Under Facts of Case Stated.** Where an officer following defendant, who was carrying a jug of whisky wrapped in a sack, commanded defendant to stop, and in obedience thereto defendant stopped, held, that in view of sect'on 3913, Revised Statutes of 1919, defining arrest, the arrest was com pleted at that time, and not after the officer had examined the contents of the sack; an arrest being made by an actual restraint of the person of defendant.

5. ———: **Misdemeanors: Lawful Arrest for Misdemeanor Cannot be Made on Suspicion or Information.** A lawful arrest for a mis-demeanor cannot be made on suspicion or information or reasonable grounds to suspect that a misdemeanor is being committed.

6. **CRIMINAL LAW: Arrest: Arrest and Search Without Warrant and Based on Suspicion That Defendant Carried Whisky Held Unlawful, and Motion to Suppress Evidence Thus Obtained Should Have been Sustained.** Where an officer saw defendant carrying something in a sack under his arm, but did not know it was whisky, and arrested defendant without a warrant, and uncovered a jug containing whisky, held, that the arrest and search were unlawful, and de-

' fendant's motion to suppress evidence thus obtained should have been sustained.

. *Headnotes 1. Criminal Law, 16 C. J., Section 1110; 2. Arrest, 5 C. J., Sections 30, 31, 74 (Anno); 3. Arrest, 5 C. J., Section 31; 4. Arrest, 5 C. J., Sections 2, 74; 5. Arrest, 5 C. J., Section 31; 6. Criminal Law, 16 C. J., Section 1110.

Appeal from the Circuit Court of Dunklin County.—*Hon. W. S. C. Walker,* Judge.

REVERSED AND DEFENDANT DISCHARGED.

*John A. McAnally,* of Kennett, for appellant.

BRADLEY, J.—Defendant was charged by information with the possession of whiskey in violation of section 6588, Revised Statutes 1919, as amended by Laws of 1921, p. 413, and was convicted. Failing to get a new trial, he appealed.

The question of consequence presented in the record is the action of the trial court in overruling a motion to suppress the evidence alleged to have been obtained by an unlawful seizure and search. There is no claim that the officer had any kind of a warrant. The officer, W. M. Hurn, a special policeman at the time in the city of Kennett, merely on suspicion arrested defendant, and in a sack which defendant was carrying found a bottle of what was called white mule whiskey. On the motion to suppress defendant testified that the officer came up and slapped him on the arm and said: "Consider yourself under arrest;" that at that time he had under his arm a bottle of whiskey wrapped up in a tow sack; that the officer had no warrant and that he, defendant, was placed under arrest before the officer looked in the sack.

The officer testified: That particular evening I was going up to the light plant; this train comes in of an evening about that time and I went for the purpose of seeing whether anybody might get off with whiskey or

not. I was going up the railroad switch on the east side of a string of box cars, and the train came in before I got there. Mr. Dunivan got off with a sack under his arm and come meeting me, and I didn't think anything about it when I first saw him, but when he noticed me he turned; he had went about the length of three cars, and he turned and began to run north; and I went under the cars and he continued to run and I went down after him; I was some fifty yards behind him part of the time, but I gained and when he went into this gate I was in about twenty-five steps of him, and when I turned around the corner of the building I was in four or five feet of him, and I told him to stop, and he dropped a sack, and he says, 'You didn't get it off of me,' and I picked the sack up and taken him out and went down the sidewalk a piece, and I says, 'Lets see what you have got here' and I unrolled the sack and found the jug in it, and he asked me to stop and let him rest and I told him I would have to take him to the big jail. Q. Did you get the sack and bottle before you made the arrest of the defendant? A. I told him to come with me when I picked the jug up; he dropped it just before I got to him, and after I seen what it was I told him I would have to take him to the big jail. Q. Did he stop when you first said stop? A. Yes, sir, he stopped and turned it loose immediately. Q. Did he keep going or did he stand still? A. Stood right there. Q. Did you pick up the bottle and sack next? A. Yes, sir. Q. Then had you placed him under arrest then or did you place him under arrest later? A. I don't know whether I told him to consider himself under arrest or not, but I told him to stop. Q. After you picked up the jar what did you say? A. I told him to come go with me, but, whether I made the remark, 'Consider yourself under arrest,' I don't remember. Q. He didn't have the sack under his arm at the time you put him under arrest, or did he? A. No, sir, I had the jug when I told him to

come and go to the big jail; if I told him he was under arrest at all, I don't remember it."

It seems that the prosecuting attorney, on the motion to suppress, was endeavoring to establish that defendant was not arrested until after the officer got the sack containing the bottle, and that defendant's counsel was endeavoring to establish that defendant was arrested before the officer got the sack or knew what was in it. When the officer made the arrest, that is whether before or after he got the sack, seemed to be the controlling fact on the hearing of the motion to suppress. In ruling on an objection the court said: "That (meaning when the officer got the sack) is the very essence of the thing. You (counsel for defendant) say he arrested him before he got the sack, and Mr. Billings, (the prosecuting attorney) is trying to show he arrested him after he got the sack."

The success of the motion to suppress depended upon the legality of the search or seizure whichever it may be termed, and not upon when the arrest was made. If the search or seizure was wrongful then the motion to suppress should have been sustained. Since the cause at bar was tried our Supreme Court in banc has ruled upon a similar state of facts. In State v. Owens, 259 S. W. (Mo. Sup.) 100, 32 A. L. R. 383, it appears that the dedefendant was detained by the sheriff and searched without any warrant or process of any kind, and a pint of whiskey was taken from his hip pocket. Defendant Owens was charged, tried, and convicted for possession under section 6588, Revised Statutes 1919, as amended in 1921, Laws 1921, p. 413, the section under which defendant at bar was convicted. The sheriff in the Owens case testified that Owens was not doing anything at the time; that he did not know whether he was drunk or sober, that he did not place him under arrest at the time he searched him. The sheriff did not see any whiskey, and had no knowledge of it, but may have had a suspicion. He had had a conversation with his deputy about "a man full of booze." He saw Owens coming out of a restaurant,

seized him, and took a pint bottle of whiskey from his hip pocket. The Supreme Court in an able and exhaustive opinion held that the search by the sheriff was in contravention of fundamental rights protected by the Constitution of the State, and ruled that the motion to suppress should have been sustained.

An officer without a warrant has no right to detain the citizen and search his person of effects except where a felony has been committed, and there is probable cause to believe the person arrested is guilty thereof. In misdemeanors arrest without a warrant is unlawful unless the offense is committed in the officer's immediate presence and view. [State v. Gartland, 263 S. W. (Mo. Sup.) 165; Wehmeyer v. Mulvihill, 150 Mo. App. loc. cit. 206, 130 S. W. 681; State v. Grant, 76 Mo. 236; State v. Boyd, 196 Mo. loc. cit. 59, 94 S. W. 536; State v. Peters, 242 S. W. (Mo. Sup.) loc. cit. 896.]

There are two lines of cases among the several states respecting the admissibility of evidence obtained by an unlawful seizure or search. On the one side is the Supreme Court of the United States, together with most of the States, holding that evidence obtained by an unlawful seizure or search is not admissible to establish the guilt of the accused. On the other side are several States holding that the admissibility or competency of evidence is not affected by the manner in which it is obtained. Missouri follows the rule of the United States Supreme Court, as do most of the States. In the Owens case, supra, the authorities are collated and discussed at length, and the opinion therein and the note in 32 A. L. R. 383, well nigh exhaust the field, so that discussion here is not necessary. A dissenting opinion in the Owens case collates a great number of authorities holding that evidence obtained by unlawful seizure or search is competent and admissible. [See also State v. Aime, 62 Utah, 476, 220 Pac. 704, 32 A. L. R. 375.]

We do not think that it is of consequence just when the officer arrested defendant, but in view of the evidence

the conclusion is inevitable that the arrest was made when the officer commanded defendant to stop and in obedience to that command defendant stopped. An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of a warrant or otherwise. [Sec. 3913, R. S. 1919.] A lawful arrest for a misdemeanor cannot be made on suspicion, or information or reasonable grounds to suspect that a misdeameanor is being committed. [State v. Gartland, 263 S. W. (Mo. Sup.) loc. cit. 169; State v. Owens, supra.] The Gartland case also holds that an offense is not committed in the presence and view of the officer unless he *knows* that it is committed, and a great number of cases are cited so holding. In the Gartland Case, loc. cit. 170, the court says: "In this case the offense which the officers suspected Boyd was committing was a misdemeanor; they had no right to arrest him on suspicion because they believed, or had reason to believe, he was in the possession of liquor; therefore they had no right to follow him for that purpose."

Further discussing the question of arrest for misdemeanor without a warrant the court in the Gartland case says: "There are a number of cases directly in point; where an officer seized a man without advising him that he was under arrest, and in the scuffle a bottle of whiskey fell from the defendant's pocket, it was held not admissible in evidence. [People v. Margelis, 217 Mich. 423, 186 N. W. 488.] So of the search of a defendant's grip without a warrant. [People v. Foreman, 218 Mich. 581, 188 N. W. 375.] In Ash v. Commonwealth, 193 Ky. 663, 236 S. W. 1032, evidence obtained by search of the defendant's grip was held inadmissible because the search was unlawful. In case of search of a prisoner arrested without warrant and discovery of a concealed weapon, the search was unlawful. [Pitts v. State, 14 Ga. App. 283, 80 S. E. 510.] Where a defendant was searched without being arrested and whiskey which was not open to the

observation was found in his pocket, it was held that the search was illegal and the evidence thus discovered was incompetent. [Helton v. Commonwealth, 195 Ky. 678, 243 S. W. 918, citing several cases.]''

The officer in the cause at bar at most had only a suspicion that defendant was in the possession of whiskey. There had been no felony committed and the officer was not on the lookout for a felon. He merely suspicioned that defendant was committing a misdemeanor. There was nothing of substance, as evidential substance is understood, to justify pursuit, but notwithstanding the absence of right or justification the officer ''went down after him.'' We are not attempting herein to construe the Constitution. We are merely applying the law as we find it to the facts in hand. In doing so we have reached the conclusion that the motion to suppress should have been sustained. Having reached this conclusion it follows that the judgment should be reversed and defendant discharged, and it is so ordered. *Cox, P. J.*, concurs; *Bailey, J.*, not sitting.