STATE OF MISSOURI, Respondent, v. JAMES LEEMAN MONTGOMERY, Appellant, No. 43169—251 S. W. (2d) 654.

Division One, October 13, 1952.

*Frank E. Mathews* and *James J. Rankin* for appellant.

*J. E. Taylor*, Attorney General, and *Samuel M. Watson*, Assistant Attorney General, for respondent.

CONKLING, J.—James Leeman Montgomery, defendant-appellant, was charged in the circuit court with one prior conviction of a felony and with first degree robbery by means of a dangerous and deadly weapon. Upon his trial the jury found him guilty of

first degree robbery by means of a dangerous and deadly weapon and assessed his punishment at 15 years' imprisonment in the penitentiary, and he has appealed.

Upon the trial there was testimony adduced from which the jury could have found that on October 28, 1950, about 6:30 p. m., defendant entered the office of Dr, Park J. White in the City of St. Louis, Missouri, and, pointing a revolver at Doctors White and Sato, both then there present, and by putting them in fear of immediate injury to their person, compelled them to lie face down on the floor; that while holding the gun on the two doctors defendant took $30.00 from the person of Dr. White and $10.00 and some checks from a desk drawer in the room; and that after ordering the men to continue lying on the floor defendant fled with the money and checks. Defendant does not here challenge the sufficiency of the evidence adduced to support the judgment of conviction. The defendant, and other witnesses, gave testimony tending to prove an alibi. Upon this appeal defendant contends that the lower court erred in, (1) permitting the separation of the jury at night and allowing each juror to go to his respective home, or elsewhere, (2) failing to declare a mistrial because of certain rebuking statements of the trial court to and concerning defendant's counsel made in the jury's presence, and (3) failure to declare a mistrial because of certain argument to the jury made by the State's counsel. We consider these matters in order.

We first give attention to the above contention respecting separation of the jury. It appears that the jury were sworn on the morning of March 14, 1951, and heard a portion of the evidence that day. On that evening at the adjournment hour the jury were permitted to separate and go to their homes. On March 15th, further evidence was heard by the jury and the verdict was thereafter returned on that date.

Defendant relies on Section 546.230 [all statutory references are to RSMo. 1949, [656] unless otherwise indicated] which in part provides: "With the consent of the prosecuting attorney and the defendant, the court may permit the jury to separate at any adjournment or recess of the court during the trial of all cases of felony, except in capital cases"; etc., and upon Section 560.135 prescribing the punishment for robbery in the first degree by means of a deadly weapon at death, or at imprisonment in the penitentiary for not less than five years.

But it affirmatively appears that in this case "the State was not asking the death penalty" and under the instructions given by the court to the jury they could not assess the capital punishment. Under instruction one submitting only robbery in the first degree by means of a dangerous and deadly weapon, in the event of finding defendant guilty, the jury could assess only the punishment of im-

prisonment in the penitentiary for not less than five years. And under instruction two, submitting a prior conviction of a felony *and* robbery in the first degree by means of a dangerous and deadly weapon, in the event of finding defendant guilty, the jury could have assessed only life imprisonment.

The assessment of capital punishment not even having been requested by the State and not being at all assessable under the court's instructions, this was not a "capital case," as those words are used in Section 546.230 and the jury could be permitted to separate by consent or agreement.

The record shows that upon the hearing held on the motion for new trial defendant's counsel agreed that he did not protest or object or except to the above separation of the jury, and the record otherwise confirms that defendant did not object or except. We have held that in the absence of any objection or exeception by the defendant to the separation of the jury it will be presumed that the necessary consent of defendant was given thereto; that defendant's consent to jury separation may be acted or even implied; and that, in *other than capital cases*, "the act of permitting them [the jury] to separate is a matter of procedure, amounting to an irregularity, which must be taken advantage of by exception." State v. Brown, 75 Mo. 317, State v. Stanfield, Mo. Sup., 1 S. W. (2) 834 State v. Bowman, 12 S. W. (2) 51, State v. Kenyon, 343 Mo. 1168, 126 S. W. (2) 245.

Under the above circumstances the contention made that the separation of the jury was reversible error is without merit and must be overruled.

During the cross-examination of Dr. White by defense counsel the court said "Let me rule, and please, gentlemen don't interrupt counsel in his objections." The court then sustained a State's objection. Mr. Rankin, defense counsel, then started to ask another question, and Mr. Walsh [for the State] interrupted and objected. Mr. Rankin instantly sought to finish his question which had been interrupted. The following then occurred:

"THE COURT: Mr. Rankin, when I am trying to pass on an objection—I will fine you for contempt in a few minutes, if you don't accord this Court the proper conduct of counsel. Do you understand what you are doing here? You are interfering with the orderly process of this court, or do you understand that?

MR. RANKIN: Well, if I have offended Your Honor and the decorum of this court, I am certainly sorry and I want to apologize for it. I was asking a question and Mr. Walsh made an objection.

THE COURT: You pursued that during the time he was objecting; don't you realize that?

MR. RANKIN: I hadn't finished my question.

THE COURT: You had finished your question in my judgment and I think the record will bear me out. Mr. Rankin, the next time you do that I will have to impose some punishment.

MR. RANKIN: As I said - -

THE COURT: I will accept your apology, but accord this Court the proper conduct of counsel.

MR. RANKIN: I certainly never have intended anything else.

THE COURT: All right. Now, you have been advised. Sit in your chair, please.

You made an objection, Mr. Walsh?

MR. WALSH: Yes, Your Honor.

THE COURT: What was the basis for your objection?

MR. WALSH: On the ground it is irrelevant and immaterial whether or not anybody was held up seven weeks after - -

THE COURT: Sustained.''

Defendant's counsel then moved for a mistrial on the ground that the Court's remarks were prejudicial to defendant and would prevent defendant from receiving a fair trial.

Under our system of jury trials, the judge before whom the trial is conducted has a deep responsibility for the orderly and dignified conduct of courtroom proceedings. When the issue is one which may imprison the defendant on trial in a criminal cause, the tension of the courtroom drama and the human frailties and emotional factors inevitably involved serve but to make the judge's task the more difficult. Order and decorum must be maintained. The factual inquiry must be conducted within the issues and at all times under the applicable rules of law. Even if counsel or others should be guilty of misconduct the judicial calmness and the dignity and the self-restraint and obvious impartiality of the judge must always be maintained and made manifest. The judge must not indicate a belief in either the guilt or innocence of the accused. Nor may he let such belief be reflected or even conjectured by the jury in his treatment of either counsel. We know that juries are inclined to draw conclusions and are quite sensitive to any indications of the judge's belief as to the merits of the issue being tried.

We have read and re-read this entire record and have considered and re-considered the above set out incidents against the background of the entire trial. From experience in the courtroom and in the examination of the records of trials we know that no paper record, such as we have in appellate courts, will fully disclose trial atmosphere, or jury mood or sensitivity to remarks and incidents of doubtful propriety.

But notwithstanding the fact that this record discloses that both the State's and defendant's counsel had theretofore interrupted each other, and on occasions had interrupted the witness, and that the case was being bitterly contested and that the evidence being received with some difficulty we find no situation presented here sufficiently provocative to warrant our approval of what occurred. Counsel, of course, should not interfere "with the orderly process" of the court and at all times should accord the court the proper conduct of counsel. But we think that defendant's counsel in the above instance did not transgress in that regard. The court's threat "to impose some punishment," to "fine you for contempt in a few minutes," and, after counsel had sought to placate the court by apology for a transgression which the record in this instance shows counsel had not committed, for the court to say to him, "Now you have been advised. Sit in your chair please," served but to put defendant's counsel into a most humiliating and shameful situation before the jury, and was very prejudicial to the defendant. State v. Davis, 284 Mo. 695, 225 S. W. 707, 710, State v. Montgomery, 223 S. W. (2) 463, People v. Rothe, 358 Ill. 52, 192 N. E. 777, Boyer v. State, 16 Okla. Cr. 388, 183 P. 620, 23 C. J. S. Criminal Law, § § 989, 995.

The Attorney General contends that the action of the trial judge constituted no more than a mere reprimand of defendant's counsel and "in no way indicated how the judge thought the case ought to be decided." State v. Long, 336 Mo. 630, 80 S. W. (2) 154, 161, and State v. Teeter, 239 Mo. 475, 144 S. W. 445 are cited to support that contention. But we believe that the above matter cannot be so lightly cast aside or glossed over. In addition to the court's threat to impose a punishment and to fine [658] defendant's counsel, the latter and the jury were told that the defendant's counsel was "interfering with the orderly process of this court * * * now you have been advised, sit in your chair." While of course the trial judge had no intention to influence the jury, it was a most regrettable incident and the court's language and attitude were quite unfortunate. And in other respects and in other circumstances of record in this case the clear animosities of the above occasion are likewise reflected.

During his argument to the jury Mr. Walsh, counsel for State, was permitted to argue, First; that two police officers, who were witnesses in the case, went to certain places in St. Louis to check on defendant's story as to his alibi, and to say "And they went out and checked it. It would have been hearsay for them to tell you what they found out - -." Second: Mr. Walsh was likewise permitted to state in his argument to the jury, when disscusing the testimony of defendant's two alibi witnesses, as to how those two witnesses secured permission to get in the city jail to see defend-

ant: "All that time I am wondering how they got in the city jail, so I found out last night. They went in and lied to the City Officials, just as they lied to you twelve --." Third: Defendant also complains that Mr. Walsh, in his argument to the jury, in discussing defendant's history and past record, made reference that the "F. B. I. Hoover Sheet" also shows that defendant was also guilty of "breaking out of jail" and in so doing referred to matters not in evidence. That F. B. I. Hoover Sheet was not even offered in evidence.

As to the above noted instances of objections to alleged improper argument it seems clear to us that the State's counsel transgressed the bounds of proper and legitimate argument. The clear intendment and inference of the first above noted instance is that defendant had told the police where he claimed that he was when the crime was committed, and that the police had checked upon what defendant told them, but that the State could not show the results of such investigation and police check because of the rule against hearsay testimony. Thus the clear intendment of the argument was that the State's counsel knew of facts establishing defendant's guilt which, because of an exclusion rule as to the evidence, the State had not introduced in evidence.

As to the second above noted instance, the State's counsel again, by intendment, left the inference with the jury that he knew facts "found out last night" [when the record shows the court was not in session] and which, if known to the jury, would lead them to the conclusion that the two alibi witnesses had lied to the jury.

And in the third above noted instance, in the argument, the State's counsel made improper and prejudicial reference to matters which were not in the record and before the jury, and which the State did not even offer in evidence.

The State's attorney may not be permitted free rein in the argument to the jury. Over defendant's objections he may not use such language as to unmistakably intimate or infer to the jury that he possesses or knows of facts tending to establish the guilt of the defendant on trial, and which are not in evidence, or which for some reason could not be introduced in evidence, or which, if the jury but knew such facts, would cause them to return a verdict of conviction. State v. Pierson, 331 Mo. 636, 56 S. W. (2) 120, 125, State v. Lenzner, 338 Mo. 903, 92 S. W. (2) 895, 896, State v. Hart, 292 Mo. 74, 237 S. W. 473, 480. The argument was improper and the court erred in approving it.

"An improperly conducted criminal proceeding is a grave and serious matter." And our view, or the instant jury's view of the guilt or innocence of the defendant [in view of the trial record now before us] is not important. It is important however, that the defendant have a fair trial.

Under the record now before us we do not believe that defendant was accorded a fair trial. The judgment is reversed and the cause is remanded for new trial. All concur.