STATE of Missouri, Respondent,

v.

Anthony Gilbert STOKES, Appellant.

No. 50670.

Supreme Court of Missouri,

Division No. 1.

Feb. 8, 1965.

Motion for Rehearing or for Transfer to Court En Banc Denied March 8, 1965.

Thomas F. Eagleton, Atty. Gen., Jefferson City, Clarence Bradley Mitchell, Sp. Asst. Atty. Gen., Kansas City, for respondent.

Joseph Langworthy, Pacific, Henry D. Menghini, St. Louis, for defendant-appellant.

HOLMAN, Judge.

Defendant, Anthony Gilbert Stokes, was charged with and found guilty of the offense of burglary in the second degree. The court found, as charged, that defendant had been convicted of nine prior felonies (the essential facts concerning same being stipulated) and accordingly fixed his punishment at imprisonment in the penitentiary for a term of nine years. See §§ 560.070, 560.095 (2), and 556.280. (All statutory references are to RSMo 1959, V.A.M.S.). Defendant has appealed from the ensuing judgment.

The State's evidence will support the following statement of facts: W. D. Carter operated a service station located at 3727 Easton in St. Louis, Missouri. George W. Culpepper was employed by Carter as a mechanic. On August 26, 1963, Culpepper quit work at 10:30 p. m. and left the station in a car driven by his cousin. He left his car parked on the filling station premises. A short time later Carter checked all the doors and windows to see that they were locked, and closed the station. At about 11:30 p. m. Culpepper, accompanied by his wife, daughter, and cousin, returned to the station and parked the car on the west side of the building where they sat in the car eating sandwiches. Shortly thereafter, Culpepper saw a man inside the station attempting to pry open a coke machine. There were two lights burning in the building. He got out of the car and looked through one of the windows and saw that the man was wearing a leather cap, a leather jacket, and green trousers. At that time his wife went across the street and called the police. The man in the station ran out the front door and down an alley between

Cozzens and Cass Streets, with Culpepper in pursuit. At that point Culpepper lost sight of the man. In a short time the police arrived and he gave them a description of the person whom he had seen in the station and informed them as to where he had last seen him. He then returned to the service station.

Sergeant Zwiefel, one of the officers searching the area, was assigned to the canine division and used a trained police dog in the search. After the search had continued for ten or fifteen minutes the dog barked, indicating that a man was nearby, and Sergeant Zwiefel then (with the aid of his flashlight) saw a man lying face down in the weeds in one of the back yards in that area. He put the dog on a leash and then directed that the person (who was identified as defendant) stand up. The officer then searched the defendant and found 53 nickels and a flashlight in his pockets. A pair of gloves was also found on the ground. The place where defendant was found was 1½ blocks from the service station.

An examination of the service station disclosed that a window in the back of the building had been broken and the glass removed from it. A flashlight and a pair of gloves had been taken from the building, and a peanut vending machine which was operated by the use of nickels was broken into and the coin box removed. A pair of binoculars had been removed from a desk drawer but were found on the work bench.

Shortly after Sergeant Zwiefel arrested defendant he took him to the service station. At that time he was wearing a leather cap, leather jacket, and green trousers. He was identified by both Culpepper and Carter as a customer of the station. Culpepper testified that he had not been able to see the face of the person in the service station but that such person was dressed in the same manner as defendant was dressed when he was brought to the station by the police.

On cross-examination Culpepper testified that while he did not recall smelling the odor of liquor on the defendant after his arrest, defendant did act like he had been drinking as his speech was "slurred" and he appeared somewhat incoherent.

Mr. Carter identified the flashlight and gloves which the police obtained from defendant as being his property and stated that those items were in the station at the time it was closed on the night in question. Other facts will be stated in the course of the opinion.

Defendant offered no evidence.

■■ The first point briefed is that the court erred in overruling defendant's objection to a statement of the circuit attorney in his closing argument relating to the question of whether fingerprints were taken in the filling station. There was no evidence that any effort was made by the police to obtain any fingerprints. However, in his cross-examination of Patrolman Sartorius, defendant elicited testimony to the effect that the flashlight and perhaps a portion of the binoculars contained good surfaces for obtaining fingerprints. On the basis of that evidence, defendant's attorney argued to the jury that defendant should be acquitted because the State had not proved that he was in the filling station by evidence that his fingerprints had been found therein or on items taken therefrom. In answering that argument the circuit attorney stated: "Let's not be misled. If we had fingerprints, if they had been taken, if they could have been taken, they would have been taken." An objection, based upon the fact that the statement was unsupported by the evidence, was overruled.

In support of his contention of error defendant has cited State v. Emry, Mo. Sup., 18 S.W.2d 10, State v. Montgomery, 363 Mo. 459, 251 S.W.2d 654, and State v. Lenzner, 338 Mo. 903, 92 S.W.2d 895. These cases all hold that it is error for the State's attorney, in his argument, to "use such language as to unmistakably intimate or infer to the jury that he possesses or

knows of facts tending·to establish the guilt of the defendant on trial, and which are not in evidence, or which for some reason could not be introduced in evidence, or which, if the jury but knew such facts, would cause them to return a verdict of conviction." State v. Montgomery, 363 Mo. 459, 251 S.W.2d 654, 658. That rule has no application here. The circuit attorney was not attempting to convey to the jury the impression that he knew of evidence, not presented, which, if disclosed, would convince the jury of defendant's guilt. The statement relates to a negative fact, which could reasonably be inferred from the evidence, that no fingerprints could be or were taken. We have concluded that the statement complained of did not constitute prejudicial error and that the court did not err in its ruling.

■ Defendant's attorney, in his argument, commented upon the fact that the State did not produce Culpepper's wife and cousin as witnesses. In answer to that argument the circuit attorney stated that "Culpepper went to this window, Culpepper looked in. What are the relatives going to tell you? I don't see where they can add anything to this case. There's a right of subpoena in here—" The court overruled an objection by defendant and denied his motion for a mistrial. The circuit attorney, however, did not pursue that line of argument any further. Defendant here contends that the statement constituted error because Culpepper's wife and cousin were not equally available to him.

We need not determine whether or not Culpepper's wife and cousin were equally available to both sides. This for the reason that the circuit attorney did not argue that defendant should have called those persons as witnesses. He made an appropriate argument that they could not add anything to the case. He had started another sentence with the words, "There's a right of subpoena in here," when interrupted by the objection. We do not know (nor did the jury) what he might have said if no interruption had occurred. What he actually said was not sufficient to convey the thought that defendant could have called those witnesses if he wanted the jury to hear their testimony. Any inference adverse to the prosecution which may have been created by the prior argument of defendant's attorney was not destroyed by the circuit attorney's vague and incomplete statement herein complained of. We rule this point adversely to defendant.

■ The next contention of defendant is that the court erred in making a comment on the evidence in violation of S.Ct. Rule 26.09, V.A.M.R. The point arose in this manner: Defendant's attorney was making the argument that Culpepper may have burglarized the station and when danger of detection appeared he may have run up the alley, found defendant lying there drunk, and "planted" the flashlight, gloves, and nickels on him. Then the following occurred: "Mr. Schechter: Your Honor, I will object to that, there is no evidence that this man was drunk at any time. The Court: The jury will remember the evidence. *I do not recall any evidence in the record of drunkenness."* After the ruling the attorney continued to argue that defendant was drunk and that someone put the items on his person. The instant complaint relates to the statement we have italicized. Defendant has not preserved this point for review because no objection was made to the remark of the court. However, disregarding that omission, we think it is manifest that no prejudicial error occurred. There was some evidence that defendant may have been under the influence of alcohol. In this instance, however, the court reminded the jurors that they should rely on their memory of the evidence. Moreover, the judge did not state that there was no evidence of drunkenness but that he *did not recall* any. Furthermore, quite some time later in his argument, defendant's attorney again referred to the fact that defendant was drunk and the circuit attorney objected on the basis that there was "not one iota of evidence about drinking." In response, the court stated:

"The jury will remember what evidence there was and what evidence there was not before them." For the reasons stated, the point is disallowed.

Prior to trial defendant filed a motion to suppress the use in evidence of the articles (gloves, flashlight and 53 nickels) taken from him at the time of his arrest. Although the record is not entirely clear it may be inferred that said motion (based upon an alleged illegal search following an arrest without a warrant or reasonable cause) was heard and overruled. No complaint is made of that ruling. However, during the trial, defendant made an oral motion renewing his contention that those items should be suppressed. His final point here is that the court erred in overruling that motion and in admitting said articles in evidence.

We doubt that defendant is in a position to complain of the ruling on his oral motion because the issue he attempted to raise must ordinarily be determined (in the absence of surprise) prior to trial by motion to suppress. See State v. Garrison, Mo.Sup., 305 S.W.2d 447, and cases cited therein. We have, however, reviewed the question ex gratia and have concluded that it is without merit. A review of our statement of facts will disclose that Sergeant Zwiefel undoubtedly had reasonable cause to believe that defendant had committed a felony and hence he could make a lawful arrest without a warrant. And, having made a lawful arrest, the officer had a right to search defendant and to take from his possession incriminating evidence such as the articles now being considered. State v. Berstein, Mo.Sup., 372 S.W.2d 57. Upon this appeal defendant primarily contends that the search was unlawful because the arrest did not occur until after the search. That is based upon the fact that upon cross-examination Sergeant Zwiefel (after he had described the search) testified as follows: "Q. Did you then take him into custody? A. That's correct."

We agree with the finding of the trial court that defendant was under arrest from the time the officer took control of his movements and directed him to "stand up." Section 544.180; State v. Dunivan, 217 Mo. App. 548, 269 S.W. 415 [4]. Certainly, under the facts of this case, it may reasonably be said that the search of defendant was incident to a lawful arrest and it therefore follows that the court did not err in overruling the motion and in admitting the articles in evidence.

An examination of the record as required by S.Ct. Rule 28.02, V.A.M.R., discloses no error.

The judgment is affirmed.

All concur.