Jack Mervyn JONES, Appellant,

v.

James E. SCHAFFNER, Director of Revenue, Respondent.

No. 57673.

Supreme Court of Missouri,
Division No. 1.

April 8, 1974.

Motion for Rehearing or to Transfer to Court en Banc Denied May 13, 1974.

Richard E. McFadin, Jefferson City, for appellant; McFadin, Spooner & Mc-Fadden, Jefferson City, of counsel.

John C. Danforth, Atty. Gen., Richard L. Wieler, Asst. Atty. Gen., Jefferson City, for respondent.

HIGGINS, Commissioner.

Appeal from judgment affirming revocation of license to operate a motor vehicle because of refusal to submit to a chemical test. §§ 564.441–564.444, V.A.M.S. Appellant asserts denial of due process of law and questions involving construction of the Constitutions of the United States and of Missouri.

Section 564.441 provides: "Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 564.441, 564.442 and 564.444, a chemical test of his breath for the purpose of determining the alcoholic content of his blood if arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while intoxicated."

Section 564.444 provides: "1. If a person under arrest refuses upon the request of the arresting officer to submit to a chemical test, which request shall include the reasons of the officer for requesting the person to submit to a test and which also shall inform the person that his license may be revoked upon his refusal to take the test, then none shall be given. In this event, the arresting officer, if he so believes, shall make a sworn report to the director of revenue that he has reasonable grounds to believe that the arrested person was driving a motor vehicle upon the public highways of this state while in an intoxicated condition and that, on his request, refused to submit to the test. Upon receipt of the officer's report, the director shall revoke the license of the person refusing to take the test for a period of not more than one year; * * *.

"2. If a person's license has been revoked because of his refusal to submit to a chemical test, he may request a hearing before a court of record * * *. At the hearing the judge shall determine only: (1) Whether or not the person was arrested; (2) Whether or not the arresting officer had reasonable grounds to believe that the person was driving a motor vehicle while in an intoxicated condition; and, (3) Whether or not the person refused to submit to the test."

On June 22, 1971, Officer Phillip M. Putnam of the Jefferson City, Missouri, Police Department, made a sworn report (Section 564.444 subd. 1) to the Director of Revenue that: "On June 22, 1971, at 10:12 p.m. in the county of Cole, did arrest Jack Mervyn Jones * * * and that I have reasonable grounds to believe that said arrested person was driving a motor vehicle upon the public highways of this state while in an intoxicated condition, and I did then and there request said arrested person to submit to a chemical test of his breath for the purpose of determining the alcoholic content of his blood, and that said arrested person did in fact then and there refuse to take the test."

On June 24, 1971, the Director of Revenue, through Peter W. Scott, Supervisor, Drivers' License Unit, formally notified Jack Mervyn Jones by mail that his license to operate a motor vehicle "is revoked for one (1) year effective July 9, 1971.

"This revocation is mandatory under the provisions of paragraph 1, Section 564.444 * * * because of your refusal to submit to a chemical test on June 22, 1971."

On July 2, 1971, Jack Mervyn Jones filed his Petition to Review Revocation of License Under Section 564.444, RSMo 1969, V.A.M.S., and prayed for an order requiring the Director of Revenue to reinstate his operator's license and for a stay of the revocation pending determination of his petition.

On July 8, 1971, petitioner filed his First Amended Petition and prayed additionally that Section 564.444 be declared unconstitutional and void.

Also on July 8, 1971, the court ordered the Director of Revenue to "cease and desist and stay the execution" of the revocation order pending final determination of the petition.

On September 23, 1971, following continuances granted petitioner on July 7 and September 17, the matter came on for trial to the court.

Peter W. Scott, Supervisor, Drivers' License Unit in the Department of Revenue, brought with him the records regarding the revocation of the operator's license issued to Jack Mervyn Jones, and described the revocation procedure. The notice of revocation is issued upon receipt of a sworn statement from a police officer that a licensee refused to submit to a chemical test. Mr. Scott was unaware of any revocations for less than a year. He was of the opinion that the law was susceptible to a construction that the period of revocation was not mandatory for one year; however, the Department of Revenue views and applies the statute as providing a mandatory one-year revocation. This is consistent with automatic revocation for one year in the event of conviction of driving while in an intoxicated condition in violation of state law. The department has no procedure for hearing cases involving refusal to submit to a chemical test. The department does not determine whether the licensee refused the test, whether he was arrested, or whether the arresting officer had reasonable grounds to believe the motorist was driving a motor vehicle in an intoxicated condition. This particular revocation was accomplished in the normal course of proceedings in the department upon receipt of the sworn statement of Officer Putnam.

Officer Phillip M. Putnam, the arresting officer, stopped Jack Mervyn Jones at Expressway (U.S. 50 and 63) and Jefferson Street in Jefferson City at 10:12 p.m., June 22, 1971. "I was near the intersection of Monroe and McCarty when I saw * * * a car come down the Monroe Street hill from High Street at an excessive rate of speed. I didn't trink he was going to get stopped at McCarty and Monroe, but he did. He proceeded on across McCarty Street down toward the Expressway. * * * At Monroe and the Expressway Mr. Jones ran the red light, making a right turn and he proceeded down Expressway to Jefferson Street and went in the left-hand lane. The light was on yellow. * * * Mr. Jones decided to make a left turn and the light turned red before Mr. Jones was even halfway through the intersection there. * * * I followed him around and turned my red lights on and got Mr. Jones stopped just off the Expressway on Jefferson. * * * and Mr. Jones opened his door and got out of the car, and staggered back to my police car as I was getting out. * * * He was unstable on his feet. He weaved when he walked. * * * we got in the car and I asked Mr. Jones if he would submit to the breathalyzer * * * and he said, 'Yes.' " Officer Putnam and Mr. Jones proceeded to the police station and Mr. Jones decided to call his lawyer. After his lawyer arrived Mr. Jones refused to take the test. Officer Putnam "couldn't swear to it" that he informed Mr. Jones that his license might be revoked upon his refusal to take the test; he did not give any advice with respect to the rights to counsel or that anything he said could be used against him. Officer Putnam identified his sworn statement that Mr. Jones refused to submit to the chemical test and explained that he signed and acknowledged it in the presence of Officer Forest Clark. He further described Mr. Jones at the time of arrest: His speech "was partially slurred. He wasn't inaudible. And he had a sort of a slobberish tone to him." His eyes were bloodshot. "There was a smell of intoxicating beverages on his breath." Officer Putnam observed and heard Officer Clark inform Mr. Jones that if he refused to submit to the chemical test he would lose his license. The lawyer was also present. He recalled Officer Clark's information to Mr. Jones: "If you refuse to take the breathalyzer you know you automatically lose the

license for a year. But if you take the test and you prove out to be intoxicated all you can get is six points and $50 fine" (in violation of a city ordinance). He felt Mr. Jones's intoxication was indicated by "the speed he used coming from High to Monroe. I think if he had been straight, sir, or hadn't been drinking, I don't believe he would have used that speed * * *."

Jack Mervyn Jones also gave his version of the arrest and subsequent events. " * * * I stopped the car, and I noticed in my rear view mirror the patrol cruiser had pulled in behind me. I rolled down the window. Officer Putnam came up and asked if I would submit to a breath test * * * and I said I would. He asked me to get out of my car * * * I went back to the police car. I was under the impression the test would be administered at a portable unit. * * * Officer Putnam advised me we were going to the police station where the test would be administered." Officer Putnam did not advise that if he refused the test he might lose his license. Neither did he advise, after the arrest was made, that anything he said could be used against him in court, nor that he had a right to counsel. In his opinion, he was not intoxicated. Corporal Clark, at the police station, did advise that if he refused to take the test he might lose his driver's license. He called his lawyer and "he arrived at the station and interviewed Officer Putnam at some length. * * * [he] indicated to me he felt the arrest was improper * * * [and] I was under no application [obligation] under the circumstances to submit to the test, and he advised me not to take it." He refused to submit to the test. Mr. Jones acknowledged receipt of the notice of revocation; he was never afforded an opportunity to testify or have a hearing before the Department of Revenue. Mr. Jones was aware at the time he refused to submit to the test that he would lose his license for a year if he so refused. He said the policeman did not tell him why he was stopped. Twenty or thirty minutes elapsed before he learned anything about running the red light. The officer did make it obvious that he thought he was intoxicated. Mr. Jones remembered having two drinks prior to his arrest.

Officer Forest Clark saw Jack Mervyn Jones at the Jefferson City Police Station on June 22, 1971, at 10:19 p.m. "Officer Putnam brought Mr. Jones in for a test on the breathalyzer. It takes approximately 20 minutes to get the breathalyzer warmed up. At that time I asked Mr. Jones if he would submit to the test and he said, no, he would like to have his counsel present before he took the test." When the lawyer arrived, and in the presence of the lawyer and Officer Putnam, "I told Mr. Jones if he refused to take the test he would lose his license. And then I asked [counsel] to also notify his client that if he took the test and failed it that he would only lose six points, in our court, and possibly a $50 fine." Mr. Jones was under Officer Clark's observation from 10:19 p.m. until 1:23 a.m. and, in his opinion, Mr. Jones was intoxicated.

The court found the issues required to be determined by Section 564.444, subd. 2(1)(2)(3) in the affirmative, and that the proceedings did not violate petitioner's rights to due process of law. The court then ordered the revocation to remain in effect and terminated the order to cease and desist from enforcing the revocation.

Appellant, by Point III, attacks the sufficiency of evidence to support the required findings, contending the court erred in upholding the revocation of his license "since the procedures set forth in Sections 561.440–561.444 [564.440–564.444] * * * were not followed." Specifically, he asserts "that he was never placed under arrest and that if he was under actual arrest, the requisite procedure was not followed in accordance with * * * Miranda v. Arizona, 384 U.S. 436 [86 S.Ct. 1602, 16 L. Ed.2d 694] * * * [which] required an arresting officer to advise the accused of * * * the right to remain silent; the right to an attorney; * * * and the warning that anything he said could be

used against him." He argues also that the arresting officer did not inform him, as required by Section 564.444, that his license might be revoked upon his refusal to submit to the test. Finally, he complains that the notice of revocation did not bear the signature of the Director of Revenue, "the party charged by law with the authority" to revoke.

The record has been stated in some detail to demonstrate support for the necessary findings and that appellant's charges are without merit.

■ The testimony of Officer Putnam is that he stopped Mr. Jones for driving at excessive speed and failure to heed a red light traffic signal; and he felt that Mr. Jones would not have so driven his vehicle had he not been drinking. The stop was accomplished by use of his red patrol car light, and Officer Putnam then got Mr. Jones into his patrol car and took him to the police station. These circumstances show that an arrest was made when the officer signaled Mr. Jones to stop and, in obedience to that command, he stopped. State v. Dunivan, 217 Mo.App. 548, 269 S. W. 415, 417[4] (1925); State v. Stokes, 387 S.W.2d 518, 522[7] (Mo.1965).

■ Mr. Jones was not prejudiced in these proceedings by any failure to have received the warnings he attributes to Miranda v. Arizona, supra. First, no incriminating statement was taken or used against him in these proceedings. Second, he was not denied counsel and actually had his lawyer present when he made the refusal which was the subject of this proceeding. Third, the privilege against self-incrimination protects an accused only from being compelled to testify against himself in a testimonial or communicative manner, and use of the test or analysis in question does not involve compulsion to those ends. Schmerber v. California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966); Blydenburg v. David, 413 S.W.2d 284, 288 (Mo. banc 1967).

■■ The record shows that the arresting officer informed Mr. Jones at the site of arrest that he thought Mr. Jones was intoxicated; that Mr. Jones was aware of that opinion; that Mr. Jones first consented to the test; that subsequently he was fully informed by Officer Clark in the presence of Officer Putnam of the consequences of a refusal to submit to the chemical test; and that he had the benefit of consultation with his lawyer in refusing to submit to the test. Section 564.444 requires only that the court determine whether the licensee has refused to submit to the chemical test after a request that he submit and a subsequent refusal. The decisive question is not so much who gives the warning, but whether the statutory warning was given. In these circumstances, appellant is in no position to argue that his refusal to submit to the test was made without adequate knowledge of the facts and consequences.

■ Of the last complaint, suffice to say that the notice of revocation shows that it was sent to Mr. Jones at the direction of the Director of Revenue over the signature of the Supervisor of the Drivers' License Unit of the department. The veracity of the supervisor's action was not questioned when called as a witness by petitioner at the review hearing in the circuit court.

By Point I appellant contends that Section 564.444 is unconstitutional "in that it violates the Fourteenth Amendment * * * to the extent that it allows the Director of Revenue to revoke, without a hearing, a driver's license for a period of one year." He argues "there is no opportunity prior to the notice of revocation for the defendant to present evidence * * * or to cross-examine witnesses regarding the issue of whether or not his license should be revoked. * * * The defendant in such a case is deprived of the opportunity to determine * * * what facts the Director took into consideration in revoking his license for the one-year period. * * * the procedure * * *

places the burden upon a defendant to initiate his own lawsuit * * *, retain counsel and challenge the order of revocation which has already become effective."

By citation of Blydenburg v. David, supra, appellant recognizes that his contention and supporting arguments have been denied previously by this court: "A license to operate a motor vehicle may be suspended or revoked by an administrative agent authorized by law to do so without prior notice or a hearing since due process of law is satisfied if there is provision for an administrative hearing subject to judicial review or the right to have a hearing in a court which may adequately review the administrative decision. Section 22, Art. 5, Constitution of Missouri; State ex rel. Leggett v. Jensen, Mo., 318 S.W.2d 353, 358[3] * * *.

"Sections 564.441 through 564.444 are civil in nature. They provide a method whereby an operator's driving license may be suspended or revoked for refusal to submit to a sobriety test and for a judicial review of such administrative action. These Implied Consent Laws, as they are sometimes called, originated and were further developed in the State of New York. What appears to have been the first sobriety test statute was held unconstitutional in Schutt v. Macduff, 205 Misc. 43, 127 N.Y. S.2d 116, because the statute was not limited to situations where there had been a lawful arrest of the motorist and there was no provision for a hearing at some stage of the proceedings. The New York statute was amended and the new law, in Anderson v. Macduff, 208 Misc. 271, 143 N.Y.S. 2d 257, was found not to be violative of due process of law or the right against self-incrimination. The essential elements of the New York statutes have been embodied in the Implied Consent Law of Missouri and other states. In such form, courts have generally approved the statutes and rejected claims of unconstitutionality and objections to the administrative procedure provided. [Cases cited and see] a comprehensive annotation in 88 A.L.R.2d

1064." Blydenburg v. David, supra, 413 S.W.2d 1. c. 290[7].

Section 564.443 provides that an arrest without a warrant for a violation of Section 564.440 is lawful whenever the arresting officer has reasonable grounds to believe that the person to be arrested has violated that section, and it has been demonstrated that Officer Putnam had the required reasonable ground to arrest this licensee. Section 564.444, subd. 2 provides that a person whose license is revoked may have a hearing before a court of record and authorizes the reviewing court to order the Director of Revenue to reinstate the license upon proper findings, and the record shows that such hearing was accorded this licensee. In these circumstances, the Missouri statutes satisfy the requirements of due process generally and specifically with respect to this licensee; and they are not unconstitutional under any of appellant's quoted arguments. Blydenburg v. David, supra.

Appellant also cites Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971), to argue that it requires Missouri to veer from the position established by Blydenburg v. David, supra; however, that decision does not compel a different result. It involved constitutionality of and due process under the Safety Responsibility Law of Georgia. The question was whether the Director of the Georgia Department of Public Safety could constitutionally suspend a motorist's license upon finding that he had been involved in an accident, had not complied with any of the provisions for security to injured parties, and did not come within any of the exceptions provided. Bell was a clergyman who was required to travel by automobile. He was involved in a personal injury incident when a small child rode her bicycle into collision with his car. An accident report was filed with the Director and he informed Reverend Bell that unless he was covered by liability insurance, he would have to present security for or a release from liability. Reverend Bell requested an

administrative hearing before the Director, asserting he was not liable, that the accident was unavoidable, and that he would be handicapped if he could not operate his automobile. The hearing was accorded, but the Director denied all offers of evidence as to liability and gave Reverend Bell thirty days to comply or suffer suspension. Upon review *de novo* in Superior Court, the evidence showing petitioner's lack of liability was received, and the license was ordered to remain in force. This order was overruled by the Georgia Court of Appeals, the Supreme Court granted certiorari, and its holding demonstrates the distinction between the situations of Mr. Jones and Reverend Bell: " * * * looking to the operation of the State's statutory scheme, it is clear that liability, in the sense of an ultimate judicial determination of responsibility, plays a crucial role in the Safety Responsibility Act. If prior to suspension there is a release from liability executed by the injured party, no suspension is worked by the Act. * * * The same is true if prior to suspension there is an adjudication of nonliability. * * * Even after suspension * * *, a release from liability or an adjudication of nonliability will lift the suspension. * * * Moreover, other of the Act's exceptions are developed around liability-related concepts. Thus, we are not dealing here with a no-fault scheme. Since the statutory scheme makes liability an important factor in the State's determination to deprive an individual of his licenses, the State may not, consistently with due process, eliminate consideration of that factor in its prior hearing." Bell v. Burson, supra, 402 U.S. 1. c. 541, 91 S.Ct. 1590.

Appellant would have Bell v. Burson applied in Missouri to require an administrative hearing prior to an order of revocation to determine whether the party was arrested, the existence of reasonable grounds for the arrest, and whether the party refused to submit to the test. In this connection Bell v. Burson provided Georgia with alternatives: "Georgia may de-cide merely to include consideration of the question [of liability] at the administrative hearing now provided, or it may elect to postpone such a consideration to the *de novo* judicial proceedings in the Superior Court. Georgia may decide to withhold suspension until adjudication of an action for damages brought by the injured party." 402 U.S. 542–543, 91 S.Ct. 1591.

The distinction between the suspension of an operator's license for failure to comply with the Georgia Safety Responsibility Law where liability is the crucial factor is not akin to the revocation of an operator's license for failure to submit to a sobriety test as required by Missouri's Implied Consent Law. The prescribed action of the Director of Revenue under Section 564.444 involves no discretion; it is ministerial only. Under Section 564.444 any motor vehicle operator in Missouri has given his consent to a chemical test of his breath; and, as stated by appellant, "the purpose of the law is to compel submission to the breathalyzer test * * *" when certain conditions exist. Section 564.444 does not provide for determination of a fact which, if established to the satisfaction of the Director of Revenue, would permit him the discretion to refuse to revoke the license of the nonconsenting operator. Upon receipt of the prescribed officer's sworn report, the Director has no discretion and must revoke the license of the offending motorist. There is no adjudication to make; the cause for revocation exists by reason of the arresting officer's sworn statement.

It should be noted also that appellant is in no position to claim a lack of due process within the meaning of Bell v. Burson, supra. He was given a full hearing in the circuit court prior to the actual loss of his license by reason of the revocation. It is not necessary to review cases similar to Bell v. Burson where the petitioner has been accorded procedural due process prior to any loss of license of which he complains. Jennings v. Mahoney, 404 U.S. 25, 92 S.Ct. 180, 30 L.Ed.2d 146 (1971).

By Point II appellant contends the court erred in not holding Section 564.444 void for the reason that its provisions are vague and uncertain and that it fails to provide adequate standards "coincident with the delegation of power to the Director of Revenue."

Appellant's argument is not clear; however, it appears he is asserting (1) that there is a lack of standard for the Director to consider in determining the length of revocation; and (2) that the warning provision deceives the motorist into thinking there is only a possibility his license will be revoked in that it requires the officer to inform the motorist that refusal to take the test may involve revocation.

Insofar as this record is concerned, the Director of Revenue has universally and uniformly construed his duty to be that of revoking a motorist's license for a year in every case in which he receives the required sworn report of the officer involved. Similarly, it shows that Mr. Jones was told, in connection with the warnings given him, that the Director would revoke for a year in the event of his refusal and the subsequent filing of the officer's sworn statement. Consequently, appellant is in no position to make argument (1) in this case.

Contrary to appellant's second argument, the refusal of a motorist to submit to a chemical test upon request of the arresting officer does not amount to an automatic loss of license. Revocation occurs only if the arresting officer believes the motorist was driving while in an intoxicated condition, that upon his request the motorist refused to submit to a test, and the officer subsequently so swears in a report filed with the Director. At the time of arrest and warning, the officer is not under compulsion to file the statement. The warning required, and here given, is sufficient to insure that the motorist is aware of the chemical test and the possible consequences of his refusal to submit to it.

Judgment affirmed.

WELBORN, C., concurs.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

BARDGETT, P. J., and HOLMAN, J., concur.

SEILER, J., concurs in result in separate concurring opinion filed.

SEILER, Judge (concurring in result).

The argument which appellant raises in his brief is that the statute authorizing forfeiture of a driver's license for refusal to take an intoxication test is invalid, because it allows the director of revenue to revoke a license for "not more than one year" but contains no standards to guide the director of revenue in deciding whether or not to revoke a license or for what period to revoke the license. In other words, as appellant reads the statute, the director of revenue, on proper certification, has the arbitrary power to revoke a driver's license for one year, for a period less than one year, or not to revoke the license at all. The problem is there are no standards in the statute to guide the director in determining which drivers should have their licenses revoked and for what period. Thus, the statute is subject to arbitrary and discriminatory application by the director of revenue and under the terms of the statute it is impossible to determine if it has been properly applied; that is, to determine whether under the statute this appellant's license should have been revoked for one year. See Davis, Administrative Law, Sec. 2.10 (1958).

The proposed opinion states that appellant has no standing to raise this argument because appellant was told his license would be revoked for one year and it was. However, the fact that appellant knew how long his license would be revoked does not answer the point raised, and does not cure

the objection that the statute contains no standards for determining whether appellant's license should have been revoked for a year, even though he knew that it would be. See Annot., Automobiles: Validity and Construction of Legislation Authorizing Revocation or Suspension of Operator's License, etc., 9 A.L.R.3d 756.

Respondent takes the position that the statute *requires* an automatic one year revocation. This contention finds support in Bolling v. Schaffner, 488 S.W.2d 212, 217 (Mo.App.1972) which says that one of the purposes of Sec. 564.444, RSMo, is "to punish those guilty of the offense of driving while intoxicated by revoking such offender's license and privilege to operate motor vehicles upon the highways of Missouri for a period of one year." Under this view the decision to revoke for one year is made by the statute and is not left in the director's hands. For this reason I concur in the result recommended by HIGGINS, C.