STATE of Missouri, Respondent,

v.

Randy Leon CRUM, Appellant.

No. 10022.

Missouri Court of Appeals,
Springfield District.

April 21, 1976.

Motion for Rehearing or Transfer to Supreme Court Denied May 10, 1976.

James C. Bullard, Kennett, for appellant.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

PER CURIAM.

Defendant appeals from a jury conviction for possession of more than 35 grams of marijuana for which he received a two-year sentence. Defendant's motion to suppress evidence which he claimed was obtained by a search incident to an unlawful arrest violating his rights under Amendments IV and XIV of the Federal Constitution and Article I, § 15, of the State Constitution was denied. In order to determine whether that denial was error, we must examine the evidence in the light most favorable to the conviction.

At about 2:20 p. m. on October 2, 1974, Officer Byrd was driving south on Kennett Street in Kennett, Missouri; Officer Jackson was his passenger. They noticed defendant walking north on the east side of Kennett street. Because the officers "knew [defendant] personally" and just wanted to ask "how he was doing and everything", they drove around the block turning back west onto Seventh where they stopped defendant. During the "idle conversation" which ensued, the officers saw bulges in the two breast pockets of defendant's heavy grey workshirt. The flaps on the pockets were not buttoned, but nothing was "protruding out of the pocket[s]". Jackson testified, "[I]t looked like he had a bag of marijuana inside his shirt pocket, and I could see the impressions of the marijuana coming through his shirt. To me that's what I believed it to be, bagged in a normal bag". Jackson's surmise, which he communicated to Byrd after driving away from defendant, plus defendant's reputation as a "known marijuana user" made the officers feel they had "reason to believe that Randy Crum had committed a crime".

They circled the block again and stopped defendant in front of his destination, the Boykin residence. Byrd "hollered at him to come over to the car", and defendant com-

John C. Danforth, Atty. Gen., Sheila K. Hyatt, Asst. Atty. Gen., Jefferson City, for respondent.

plied. Then Byrd "asked him what he had in his shirt pocket". Defendant's reply, "Cigarettes", did not satisfy Byrd who next requested to see the cigarettes. Defendant's answer, according to Byrd, was " 'No, I might get in trouble' ". Byrd testified defendant added as he ran into the Boykin house, "You're not going to get me in here. I'm not going to jail".

Jackson pursued defendant apprehending him inside the house. After placing defendant in the police car Jackson formally arrested him. Defendant then emptied his pockets.

Defendant contends that the second time the officers stopped him, they did so to obtain evidence from him and to arrest him although they had no probable cause to arrest; thus he was justified in resisting. We must determine whether his position is correct by answering several concomitant issues spawned by the "concrete factual context of [this] individual case." *Sibron v. New York*, 392 U.S. 40, 59[15], 88 S.Ct. 1889, 1901, 20 L.Ed.2d 917 (1968).

▇ The Fourth Amendment governs every official interference with a person's liberty of movement. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Numerous cases have held that even though an individual is not physically restrained, he can be "seized" by a sufficient show of authority. *Terry v. Ohio*, supra at 21 n. 16, 88 S.Ct. 1868; *United States v. Nicholas*, 448 F.2d 622, 624[1] (8th Cir. 1971); *Carpenter v. Sigler*, 419 F.2d 169, 171[2] (8th Cir. 1969). Not every display of authority amounting to a seizure is necessarily an arrest, however. When a person is momentarily seized under suspicious circumstances not amounting to probable cause and questioned about his identity and actions, that is a mere accosting. *State v. Jacks*, 462 S.W.2d 744, 747[3] (Mo.1970); *Schook v. United States*, 337 F.2d 563, 566[5] (8th Cir. 1964). The detainee does not submit to arrest under § 544.180, RSMo 1969, when he responds to those limited inquiries. Yet an arrest can be completed the instant he obeys an oral command to "stop", *Jones v. Schaffner*, 509 S.W.2d 72, 77[1] (Mo.1974);

*State v. Dunivan*, 217 Mo.App. 548, 269 S.W. 415, 417[4] (1925), or to "stand up", *State v. Stokes*, 387 S.W.2d 518, 522[7] (Mo. 1965). Consequently we are inclined to find Byrd's initial command during the second stop, "Come over to the car", was as coercive as "stop" and "stand up" so that when the defendant obeyed, the arrest was completed.

▇ But that determination is unnecessary for purposes of this appeal since we find Byrd definitely attempted to arrest defendant by posing the ensuing "pocket" questions. Our conclusions seems unavoidable in light of the Rhode Island Supreme Court's analysis of analogous police inquiries found in *State v. McWeeney*, 100 R.I. 394, 216 A.2d 357 (1966).

[1] . . .

At approximately 12:15 p. m. on the day of defendant's arrest, officers James H. Dodd, Jr., and Joseph R. Gonslaves of the Providence Police Department's C–squad went to a barroom in Providence, according to officer Dodd's testimony, as a result of "numerous complaints that the defendant was accepting horse and number pool bets at that establishment." The defendant had been employed there for some years as a bartender, but he was not on duty on the day in question. Officer Dodd testified that he did not know who made the complaints and there is no evidence in the record indicating that anyone knew the identity of the person or persons claimed to have made such complaints.

[2] Upon arriving at the bar the officers looked through the front window of the barroom and saw defendant sitting at a table with two men who were talking to him. The defendant had his head down writing on something with a pencil, but they were then unable to see what he was writing on because he had his left hand cupped around it. They then entered the bar. Officer Dodd testified that as he entered the front door, he went immediately toward the table at which defendant was seated; that as he opened the door, defendant looked up,

recognized him, and removed a "bill" from the table on which he was writing; and that he placed the bill in his left trouser pocket and the pencil in his jacket pocket. Officer Dodd testified that after he entered the bar and before defendant picked up the bill, he "could see at that time it was a bill. What denomination, I couldn't see. It was the bill he put in his left trouser pocket."

Officer Dodd then asked defendant what he had put in his pockets and defendant replied "Nothing." The officer then asked defendant to empty his left trouser pocket on the table, with which request defendant complied.

. . . . .

[7] *The arrest took place when officer Dodd asked defendant to empty his pockets.* At this point, in our opinion, the knowledge in the hands of the officers did not support a "man of reasonable caution in the belief" that defendant had committed a misdemeanor in his presence. See *Carroll v. United States*, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543. The arrest, being invalid, cannot be justified by the search made incidental to it. As the court said in *Henry v. United States*, supra, 361 U.S. at page 104, 80 S.Ct. at page 172: "To repeat, an arrest is not justified by what the subsequent search discloses. Under our system suspicion is not enough for an officer to lay hands on a citizen. It is better, so the Fourth Amendment teaches, that the guilty sometimes go free than that citizens be subject to easy arrest."

[8, 9] The state's contention that the evidence in question was not obtained by a search of defendant is without merit. *Officer Dodd's request that defendant empty his pockets was in effect an order which defendant could not very well refuse to obey. He was then under arrest—two officers of the law were physically there to enforce the* request. 216

A.2d at 385–59[1, 2], 360–61[7, 8, 9] (emphasis added).

The officers' conduct in McWeeney mirrors that of the officers in the present case. The defendant did not submit at the pocket-question stage as McWeeney did; but it is inescapable that the officers' purpose in stopping defendant the second time was to obtain evidence from him and arrest him. Such a detention is unlawful absent probable cause for arrest beforehand. *Davis v. Mississippi*, 394 U.S. 721, 727[3], 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

So the next issue is: did the officers have probable cause to arrest defendant prior to making the second stop? There are myriad definitions of probable cause. But a recent Missouri case citing *Brinegar v. United States*, 338 U.S. 160, 175[6], 69 S.Ct. 1302, 93 L.Ed. 1879 (1949) provides, "the substance of all definitions of probable cause is a reasonable ground for belief of guilt." *State v. Dodson*, 491 S.W.2d 334, 336[2] (Mo.banc 1973). Before the second stop the officers knew that the defendant, who had a "reputation for using marijuana practically at all times" according to Jackson, had bulging shirt pockets. We are not persuaded that Officer Jackson "could see the impressions [of marijuana] through the shirt pocket". For all he knew at that time, he might have been viewing a pocket filled with sack tobacco.[1] In view of the results of *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968); *Henry v. United States*, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959); *United States v. Nicholas*, 448 F.2d 622 (8th Cir. 1971); *State v. Hall*, 508 S.W.2d 200 (Mo.App.1974); and *State v. Dunivan*, 217 Mo.App. 548, 269 S.W. 415 (1925), "the objective facts were [not] such as to justify a prudent person in believing he had enough facts on which to base an arrest . . ." *United States v. Skinner*, 412 F.2d 98, 102[5] (8th Cir. 1969).

Defendant's flight in reaction to the unlawful interference is inapposite to whether probable cause existed prior to the

1. At our request the shirt and packets of marijuana were filed with us. It is physically impossible to detect the impression of anything other than bulges when the containers of marijuana are placed in the shirt pockets.

detention. He had a right to resist. *Kansas City v. Mathis*, 409 S.W.2d 280 (Mo.App. 1966); *Gascon v. Superior Court, County of Los Angeles*, 169 Cal.App.2d 356, 337 P.2d 201 (1969); 5 Am.Jur.2d Arrest § 94, at 778 (1962).

Since the state cannot make out a case without the evidence which should have been suppressed, the judgment is reversed and the defendant is discharged. *State v. Witherspoon*, 460 S.W.2d 281, 289[3] (Mo. 1970); *Kansas City v. Butters*, 507 S.W.2d 49, 55[9] (Mo.App.1974).

All concur.